Thomas SHANKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00235–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 20, 1999.
Decided Jan. 12, 2000.

John C. Bennett, Texas Dept. of Criminal Justice, State Counsel for Offenders, Huntsville, for appellant.

Nicole Habersang, Asst. Dist. Atty., Texarkana, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Thomas Shanks appeals from his conviction for assault on a public servant. He was convicted by a jury and sentenced to twenty years' imprisonment.

Shanks contends that the State wrongfully failed to provide him with evidence material to his defense and to sentencing, that the trial court erred by failing to charge the jury on the State's burden of proof on extraneous offense allegations, and that the trial court erred by failing to define "reasonable doubt" in the punishment charge.

The evidence shows that after going to a shower, Shanks left the door open and began masturbating in front of a prison guard. That guard, Sherry Barber, ordered Shanks to shut the door. He ignored her order and continued. She then directed a fellow guard, Richard Grooms, to get Shanks' identification card out of Shanks' cell so she could write a disciplinary report. He did so. The card was then returned to the cell. Shanks discovered what had happened while returning to his cell, and the evidence shows that he first attempted to apologize to Barber. She rebuffed his attempt. On the way back to his cell, Shanks verbally threatened Grooms and then began to hit him. As a result of the attack, Grooms suffered an eye injury requiring between twenty-five and twenty-eight stitches.

Shanks provided evidence of an alternative version of the incident, testifying that Grooms had grabbed him, that he pushed Grooms' hand away, and that Grooms then swung his fist at him. Shanks testified that Grooms tried to put his arms around him and throw him to the floor, and that they head-butted each other at that time, causing the injury. Seven other inmates also testified similarly.

Shanks contends that reversible error is shown because he was not provided with exculpatory or impeachment material in the possession of the State. He specifically contends that the State failed to disclose evidence that the supervisor of the guards involved, Lieutenant Samuel Vann, had himself been disciplined for use of excessive force while he was a lower-level correctional officer. Shanks argues that this is relevant because it reveals that such treatment of inmates is not a bar to promotion within the system. From this argument, he concludes that because the issue of guilt/innocence was essentially decided based on the credibility of the witnesses, the undisclosed record was material to the verdict.

 The State is required to provide potentially exculpatory information to the defense. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Thomas v. State,* 841 S.W.2d 399, 402 (Tex. Crim.App.1992). Under the present rule, the Due Process Clause of the Fourteenth Amendment to the United States Constitution is violated when a prosecutor fails to disclose evidence favorable to the accused that creates a probability sufficient to undermine confidence in the outcome of the proceeding. *Thomas,* 841 S.W.2d at 404. A *Brady* violation may also occur when a prosecutor fails to disclose evidence that may impeach the credibility of a State's witness where the witness' credibility is material to the determination of an accused's guilt. *Dalbosco v. State,* 978 S.W.2d 236, 239 (Tex.App.-Texarkana 1998, pet. ref'd); *Johnston v. State,* 917 S.W.2d 135, 138 (Tex.App.-Fort Worth 1996, pet. ref'd). Evidence whose value is limited to impeachment must also be provided to the defendant if the failure to do so would undermine confidence in the trial's outcome. *Ex parte Mitchell,* 977 S.W.2d 575, 578 (Tex.Crim.App.1997).

First, it is not clear that the office of the prosecuting attorney had information on Vann's personal employment history in its possession. Shanks' argument is based on his contention that the Department of Criminal Justice is a part of the "prosecutorial team," and thus the prosecutor had a duty to learn of the evidence favorable to Shanks. The Supreme Court defined this as meaning that the "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." [1]

In the present case, there is no allegation that the prosecutor's office or the police had any knowledge about Vann's personal disciplinary history, and counsel has directed this Court to no authority suggesting that the complained-of party was acting on the government's behalf in the manner described by the Court in *Kyles.* Thus, even if the information was of the type that should have been disclosed under *Brady,* it lies outside the range of information that should have been obtained by the prosecutor.

Secondly, in the present case, the witness about whom the appellant complains was a peripheral player, who did not testify about the incident itself. Vann testified generally about the procedures followed when a violent incident occurs and about the actions he took following this particular incident to preserve information for later use. Shanks argues that the evidence was important to impeach Vann's credibility because it showed that complaints about the use of excessive force by guards within penal institutions did not prevent their promotion. Even granting that such evidence might serve as some level of impeachment of Vann's testimony, we do not agree that this would necessarily impeach the testimony of the witnesses who testified about the incident at bar.

Shanks' secondary argument is a sort of trickle-down theory of credibility, that is, if you show that the superior officer is less credible because he has been accused of misconduct, then necessarily the junior officer's credibility is similarly damaged. Although in some circumstances this may be so, this is not a particularly strong argument in the present case. The evidence of Vann's record, in this context, is simply not the type of evidence that must be provided to the defendant, because the failure to provide information about such a peripheral character who did not testify about the allegation at bar does not undermine our confidence in the trial's outcome. Similarly, we also conclude that it does not undermine our confidence in the sentencing phase of the trial. These contentions of error are overruled.

1. *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490, 508 (1995).

Shanks next contends that the trial court erred by failing to charge the jury on the State's burden of proof on extraneous offense allegations, both at the guilt and at the punishment phase of the trial. If the defendant so requests at the guilt/innocence phase of trial, the trial court must instruct the jury not to consider extraneous offense evidence admitted for a limited purpose unless it believes beyond a reasonable doubt that the defendant committed the extraneous offense. *George v. State*, 890 S.W.2d 73, 76 (Tex.Crim.App. 1994). No request for this instruction was made. Thus, error at the guilt/innocence phase of trial is reviewed under the "egregious harm" standard.

This Court has held that in the punishment phase a defendant does not preserve error when he fails to object to the lack of a reasonable doubt instruction in connection with proof of extraneous offenses. *McQueen v. State*, 984 S.W.2d 712, 719 (Tex.App.-Texarkana 1998, no pet. ).[2] We also held in that case that if error was preserved without an objection to the charge, the correct standard of harm analysis is the egregious harm standard set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opinion on reh'g). Accordingly, since there was no objection to the absence of an instruction on the extraneous offenses at punishment, we conclude that the claim has been waived.

The standard of review for errors in the jury charge depends on whether the defendant properly objected. *Mann v. State*, 964 S.W.2d 639, 641 (Tex.Crim.App. 1998); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opinion on reh'g); *Gornick v. State*, 947 S.W.2d 678, 680 (Tex.App.-Texarkana 1997, no pet.). When a defendant does not object to the charge, reversal is required only if the harm is so egregious that the defendant has not had a fair and impartial trial. *Rudd v. State*, 921 S.W.2d 370, 373 (Tex. App.-Texarkana 1996, pet. ref'd).

Thus, where there has been no objection, as in the present case, we reverse only if the appellant has shown that the error caused him egregious harm. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim.App.1994); *Peterson v. State*, 942 S.W.2d 206, 208 (Tex.App.-Texarkana 1997, pet. ref'd). Egregious harm consists of errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App.1991); *Hall v. State*, 937 S.W.2d 580, 583 (Tex.App.-Texarkana 1996, pet. ref'd). We determine harm in light of the entire jury charge; the state of the evidence, including contested issues and the weight of the probative evidence; the argument of counsel; and any other relevant information revealed by the record as a whole. *Mann*, 964 S.W.2d at 641; *Rudd*, 921 S.W.2d at 373. The purpose is to illuminate the actual and not just the theoretical harm to the accused. *Rudd*, 921 S.W.2d at 373; *Hines v. State*, 978 S.W.2d 169, 175 (Tex.App.-Texarkana 1998, no pet.).

In this case, Shanks' 235 pages of disciplinary records were admitted into evidence. The records contain information about the charge upon which he had been confined as a juvenile and the conviction for which he was imprisoned, as well as seventeen contested disciplinary actions involving exposing himself and public masturbation (and five uncontested), three contested disciplinary actions for cursing at or threatening officers, two contested disciplinary actions for fighting with other inmates, two contested disciplinary actions for failing to obey a guard's order, one contested disciplinary action for disrupting security, and another for assaulting a guard.

The State referred generally to these actions during jury arguments, specifically

---

2. *Thomas v. State*, 1 S.W.3d 138, 143–44 (Tex. App.-Texarkana 1999, no pet. h.).

commenting on the existence of twenty-two disciplinary write-ups against Shanks for exposing himself and masturbating. The disciplinary charges were in large part labeled as contested actions.

There is evidence that Shanks injured a guard. There is evidence that the injury inflicted was serious. There is evidence that he committed the act which eventually resulted in the fight, and also evidence to the contrary. Shanks admitted committing several of the extraneous disciplinary offenses, as well as his prior convictions. He was not questioned about the remaining disciplinary charges except in the most general terms, and suggested that he had not committed some acts that had led to disciplinary action in the past. The State did not attempt to elicit any specific information or testimony about those acts at the trial. The details were, however, available for the jury's perusal within the exhibit.

 After reviewing the record in this case as required by *Almanza*, we are not convinced that the failure to provide a jury instruction at the guilt/innocence phase of trial, asking the jury to only consider the extraneous acts if it concluded beyond a reasonable doubt that he had committed those acts, caused egregious harm, or otherwise caused actual harm to the accused. Further, if preserved for review, we similarly find that the similar complaint raised in connection with proof of extraneous acts at the punishment phase of trial did not cause the requisite level of egregious harm to the accused.

 Shanks contends in his remaining point of error that he was deprived of a fair sentencing hearing by the failure to define "reasonable doubt" in that phase of the trial, in relation to the enhancement allegations sent to the jury. In the absence of a request, a reasonable doubt instruction at punishment need not be given by the court. *Fields v. State*, 1 S.W.3d 687 (Tex.Crim.App.1999).

 In the instant case, the record reflects that Shanks did not request a special instruction on the definition of reasonable doubt in the court's charge on punishment and that he did not object to the absence of such an instruction. Therefore, under the *Almanza* standard, he waived error. When an appellant does not preserve jury charge error by either objecting to the charge or requesting a charge, he must then prove fundamental error by showing egregious harm. *Almanza*, 686 S.W.2d at 171. As above, to determine whether egregious harm occurred, we review the entirety of the record.

 Applying these standards, we cannot say that the failure of the trial court to include the definition of reasonable doubt in the punishment charge denied Shanks a fair and impartial trial. The court's charge at the guilt/innocence phase properly defined reasonable doubt. *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App. 1991). The trial court also instructed the jury that it was its duty to determine whether the enhancement allegations were true beyond a reasonable doubt. Here, the punishment phase of the trial immediately followed the guilt/innocence phase. There is no reason to believe the jury did not remember the definition of reasonable doubt, since it had so recently applied it in the guilt/innocence phase of the trial. *See Torres v. State*, 4 S.W.3d 832 (Tex.App.-Texarkana 1999, no pet. h.).

Accordingly, we find that Shanks has failed to demonstrate egregious harm. Shanks has not met his burden of showing that the error deprived him of a fair and impartial trial so as to require reversal.

The judgment is affirmed.