John **RODGERS**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 10–04–00280–CR, 10–04–00281–CR.

Court of Appeals of Texas, Waco.

Oct. 26, 2005.

Scott K. Stevens, c/o Stan Schwieger, Waco, for appellant.

David A. Castillo, Coryell County Dist. Atty., Gatesville, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted John Rodgers of the aggravated sexual assaults of two girls less than fourteen years' old and assessed his punishment at forty years' imprisonment for each conviction. Rodgers presents the

same two issues in each case, contending that the court committed egregious error by failing to *sua sponte* instruct the jury on the State's burden of proof for extraneous offenses in the guilt-innocence charge and in the punishment charge. We will affirm.

The indictments allege that Rodgers committed each offense by causing the mouths of the complainants to contact his sexual organ. A sexual assault nurse examiner testified that one of the complainants, M.E., told her that Rodgers had assaulted her in this manner multiple times, that he had contacted her vagina with his mouth, and that he had penetrated her vagina with his penis.[1]

M.E. testified that Rodgers had forced her to perform oral sex on him multiple times, but she did not testify about other extraneous offenses. The other complainant, C.S., also testified that Rodgers had forced her to perform oral sex on him, but she never responded to the prosecutor's questions about whether Rodgers forced her to do this more than once. Nor did C.S. testify about extraneous offenses.

Rodgers offered in evidence a Child Protective Services file which reflected that CPS had first investigated the complainants' mother for suspicion of child abuse and neglect in 1998, two and one-half years before the offenses for which Rodgers was convicted. Among other things, the CPS file reflects allegations that one of the complainants had been sexually molested on a prior occasion, that one of them witnessed her mother engaged in sexual intercourse, and that one of them slept in the same bed with her mother "and [her mother's] partner" while they were naked. The file also documents CPS's investigation after the allegations against Rodgers

were made and contains the complainants' allegations of the offenses for which Rodgers was convicted and extraneous offenses he committed against them.

### Guilt–Innocence Charge

Rodgers contends in his second issue that he suffered egregious harm because the court failed to *sua sponte* instruct the jury in the guilt-innocence charge that it could not consider evidence of extraneous offenses unless the jury was satisfied that the extraneous offenses had been proved beyond a reasonable doubt.

> [The Court of Criminal Appeals] has held for many decades that "when evidence of collateral crimes is introduced for one of the various purposes for which such evidence becomes admissible, the jury should be instructed that they cannot consider against the defendant such collateral crimes, unless it has been shown to their satisfaction that the accused is guilty thereof." In other words, a jury should be instructed that they are not to consider extraneous act evidence unless they believe beyond a reasonable doubt that the defendant committed that act.

*Ex parte Varelas,* 45 S.W.3d 627, 631 (Tex. Crim.App.2001) (citations omitted).

In the punishment phase, article 37.07, section 3(a)(1) similarly permits the factfinder to consider evidence of extraneous offenses only if "shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible." Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp.2004–2005).

The Court of Criminal Appeals has considered the impact of this statute on the

---

1. This witness read the complainant's comments to the jury from the "sexual assault exam paperwork" which was marked as State's Exhibit No. 1 but never offered in evidence.

punishment charge and has concluded that it requires the inclusion of a reasonable doubt instruction in the punishment charge regardless of whether the defendant requests it or objects to its omission. *See Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim.App.2000).

> While extraneous-offense and bad-act evidence is generally admissible at punishment under section 3(a), we have recognized in unequivocal terms the circumstances in which it can be considered by the jury:
>
>> [E]vidence [of extraneous bad acts and offenses] *may not be considered* in assessing punishment until the fact-finder is satisfied beyond a reasonable doubt that [such. acts and offenses] are attributable to the defendant. [emphasis supplied] *Once this requirement is met,* the fact-finder may use the evidence however it chooses in assessing punishment.
>
> While section 3(a) says nothing about the submission of a jury instruction to this effect, such instruction is logically required if the jury is to consider the extraneous-offense and bad act evidence under the statutorily prescribed reasonable-doubt standard. Absent such instruction, the jury might apply a standard of proof less than reasonable doubt in its determination of the defendant's connection to such offenses and bad acts, contrary to section 3(a). Section 3(a)'s requirement that the jury be satisfied of the defendant's culpability in the extraneous offenses and bad acts is thus "law applicable to the case" in the non-capital punishment context. As this was "law applicable to the case" appellant was not required to make an objection or request under section 3(a) in order for the trial court to instruct the jury thereunder.

*Id.* (quoting *Fields v. State*, 1 S.W.3d 687, 688 (Tex.Crim.App.1999)) (citations omitted) (footnotes omitted).

■ As indicated by *Huizar*, the court's charge must instruct the jury on the "law applicable to the case" regardless of the defendant's request or objection. *See id.* at 484; *see also* TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2004–2005). Conversely, the Court of Criminal Appeals has historically required a defendant to request a reasonable doubt instruction on evidence of extraneous offenses (or object to its omission) before complaining on appeal that same was omitted from the guilt-innocence charge. *See Varelas*, 45 S.W.3d at 631–32; *George v. State*, 890 S.W.2d 73, 76 (Tex.Crim.App.1994); *accord Rodriguez v. State*, 137 S.W.3d 228, 231 (Tex.App.-Houston [1st Dist.] 2004, no pet.).

■ According to our research, the Court of Criminal Appeals has not considered whether this requirement should continue in light of its holding in *Huizar*. *See Rodriguez*, 137 S.W.3d at 231. For the reasons which follow, we hold that the common law requirement that extraneous offenses admitted at guilt-innocence be shown beyond a reasonable doubt is the law applicable to the case when evidence of extraneous offenses is admitted and the trial court must so instruct the jury in the guilt-innocence charge regardless of whether the defendant requests such an instruction or objects to its omission.

The "law applicable to the case" generally includes statutes which apply to the facts of a particular case. *See e.g. Huizar*, 12 S.W.3d at 484 ("[art.37.07, § 3(a)'s] requirement that the jury be satisfied of the defendant's culpability in the extraneous offenses and bad acts is thus 'law applicable to the case' "); *Arline v. State*, 721 S.W.2d 348, 352 n. 4 (Tex.Crim.App.1986) ("a statutorily defined word or phrase must be included in the charge as part of

the 'law applicable to the case' "); *Goodman v. State*, 8 S.W.3d 362, 364 (Tex.App.-Austin 1999, no pet.) ("When a witness who is an accomplice as a matter of law gives testimony to which article 38.14 applies, the statutorily required instruction is 'law applicable to the case.' ").

Sometimes, the common law serves as a basis for the "law applicable to the case." *See Gray v. State*, 152 S.W.3d 125, 131 (Tex.Crim.App.2004) ("Under our caselaw, this charge [2] instructed the jury on the law applicable to the case.").

■ However, defensive issues (even if statutorily-defined) do not constitute the "law applicable to the case" unless the defendant makes them so by presenting evidence to support their submission in the charge and by requesting their inclusion in the charge. *See Huizar*, 12 S.W.3d at 484 n. 7 (citing *Posey v. State*, 966 S.W.2d 57, 62 (Tex.Crim.App.1998)). In the same manner, limiting instructions regarding evidence of extraneous offenses do not constitute the "law applicable to the case" unless such instructions are requested by the party seeking to restrict the jury's consideration of the evidence to its admissible purpose. *See Hammock v. State*, 46 S.W.3d 889, 895 (Tex.Crim.App.2001).

■ These two categories of issues and instructions for which requests are required rest largely on strategic choices made by defense counsel. Defense counsel must familiarize himself with the facts of the client's case, identify any particular defenses which may be applicable to the facts, and develop a strategy to present the applicable defenses at trial. With regard to evidence of extraneous offenses, effective counsel will obtain pre-trial notice of those extraneous offenses which the State intends to prove at trial. *See Loredo v. State*, 157 S.W.3d 26, 29–30 (Tex.App.-Waco 2004, pet. ref'd). Counsel must then plan a trial strategy to confront this evidence and be prepared to promptly request an instruction from the court limiting the evidence to its admissible purpose. *See Hammock*, 46 S.W.3d at 893–94.

■ Unlike these two categories of issues and instructions which will vary depending on the facts of the case, the requirement that extraneous offenses admitted at the guilt-innocence phase be shown beyond a reasonable doubt is a common law requirement applicable to any case in which evidence of extraneous offenses is admitted. *See Varelas*, 45 S.W.3d at 631. The foundation for this requirement is quite similar to that for extraneous offenses admitted at punishment. *Compare id.* (jurors "are not to consider extraneous act evidence unless they believe beyond a reasonable doubt that the defendant committed that act") *with Huizar*, 12 S.W.3d at 484 ("[E]vidence [of extraneous bad acts and offenses] *may not be considered* in assessing punishment until the fact-finder is satisfied beyond a reasonable doubt that [such acts and offenses] are attributable to the defendant.").

In fact, it appears that the common law predating the enactment of the current version of article 37.07, section 3(a)(1) served as the source for the beyond-a-reasonable-doubt burden of proof the Legislature incorporated in that statute. *See* Edward L. Wilkinson, *Punishment Evidence: Grunsfeld Ten Years Later*, 35 St. Mary's L.J. 603, 667–68 & n. 363 (2004) (citing *Mitchell v. State*, 931 S.W.2d 950, 954 (Tex.Crim.App.1996) (plurality)).

---

2. The charge at issue in *Gray* instructed the jury on the "synergistic effect" of multiple intoxicants in a case in which the information alleged only alcohol as an intoxicant. *See Gray v. State*, 152 S.W.3d 125, 131 (Tex.Crim. App.2004).

In *Mitchell*, a plurality of the Court of Criminal Appeals addressed the relationship between extraneous offenses admitted at guilt-innocence and those admitted at punishment.

> [T]he use of extraneous offenses during the punishment phase should be analogous to that of the guilt/innocence phase of a trial regarding burden of proof. The use of evidence of extraneous offenses during the guilt/innocence phase is used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." During the punishment phase, evidence of an extraneous offense is offered to assist the trial court or the jury in determining punishment. When evidence of extraneous offenses has been offered, regardless of the respective phase of a trial, *the law requires* that it be proved beyond a reasonable doubt that the defendant committed the said extraneous offenses, or is at least criminally responsible for its commission.

*Mitchell*, 931 S.W.2d at 954 (emphasis added).[3]

■■■ "[T]he law requires" that extraneous offenses be proved beyond a reasonable doubt. *Id.* This requirement is more compelling during the guilt-innocence phase than during the punishment phase because the defendant's presumption of innocence is still intact. *Cf. Delo v. Lashley*, 507 U.S. 272, 278, 113 S.Ct. 1222, 1226, 122 L.Ed.2d 620 (1993) (per curiam) ("Once the defendant has been convicted fairly in the guilt phase of the trial, the presumption of innocence disappears."). Thus, "[a] defendant is 'entitled to be tried on the accusations made in the State's pleading and he should not be tried for some collateral crime or for being a criminal generally.' " *Varelas*, 45 S.W.3d at 630 (quoting *Wilkerson v. State*, 736 S.W.2d 656, 659 (Tex. Crim.App.1987)). For this reason, it is imperative that the jury be instructed that it cannot consider evidence of an extraneous offense unless the jurors "believe beyond a reasonable doubt that the defendant committed that act." *See id.* at 631.

■■■ Accordingly, the requirement that extraneous offense be proved beyond a reasonable doubt is the "law applicable to the case" when evidence of extraneous offenses is admitted during the guilt-innocence phase. "As this was 'law applicable to the case,' appellant was not required to make an objection or request ... in order for the trial court to instruct the jury" on this requirement. *See Huizar*, 12 S.W.3d at 484; *contra Rodriguez*, 137 S.W.3d at 230–31.

The First Court of Appeals has suggested that there is a division among the intermediate courts of appeals on this issue. *See Rodriguez*, 137 S.W.3d at 231. Although we agree that the courts are divided on this issue, we believe the First Court misread some of the opinions in question. According to the First Court, the San Antonio and Dallas Courts have extended *Huizar* to the guilt-innocence charge, while the Amarillo and Fourteenth Courts have (like the First Court) held that it does not apply.

---

**3.** As noted, *Mitchell* is a plurality opinion. The lead opinion in *Mitchell* was joined by only 1 judge; 1 judge did not participate in the decision; 3 judges concurred in the judgment but not the opinion; and 3 judges dissented. *See Mitchell v. State*, 931 S.W.2d 950, 950 (Tex.Crim.App.1996) (plurality). The lead opinion was quoted with approval in *Varelas*. *See Ex parte Varelas*, 45 S.W.3d 627, 631 (Tex.Crim.App.2001). In reviewing the opinions of the concurring judges in *Mitchell*, it does not appear that these judges took issue with the section of the lead opinion quoted herein. *See Mitchell*, 931 S.W.2d at 954–57 (Clinton, J., concurring; Meyers, J., concurring) (Judge Maloney joined Judge Meyers's concurring opinion).

The Amarillo and Fourteenth Courts have reached the same conclusion as the First Court that a trial court is not required to *sua sponte* submit a reasonable doubt instruction on extraneous offenses in the guilt-innocence charge. *See Gilbert v. State*, 2003 WL 22176625, at *4, 2003 Tex. App. LEXIS 8158 at *11–12 (Tex.App.-Houston [14th Dist.] Sept. 23, 2003, no pet.) (mem.op.); *Salazar v. State*, 2002 WL 246642, at *3, 2002 Tex.App. LEXIS 1335 at *9–11 (Tex.App.-Amarillo Feb. 21, 2002, pet. ref'd) (not designated for publication).

The First Court suggests that the San Antonio Court has held the trial court does have such a *sua sponte* obligation. *See Rodriguez*, 137 S.W.3d at 231 (citing *Chapa v. State*, 2003 WL 1025148, at *1-2, 2003 Tex.App. LEXIS 2091 at *3–5 (Tex.App.-San Antonio Mar. 12, 2003, pet. ref'd) (mem.op.)). However, the San Antonio Court agreed with the appellant in *Chapa* only on the issue "that the trial court erred in failing to instruct the jury as to reasonable doubt *at the punishment phase.*" *Chapa*, 2003 WL 1025148, at *1, 2003 Tex. App. LEXIS 2091 at *5 (emphasis added). Although some of the language employed by the San Antonio Court makes its discussion unclear, it appears that the emphasis in that decision was on the necessity of a reasonable doubt instruction in the punishment charge when evidence of extraneous offenses was admitted during the guilt-innocence phase. *Id.* 2003 WL 1025148, at *1, 2003 Tex.App. LEXIS 2091 at *4 ("We

assume that *Huizar* applies to extraneous offenses offered at both stages of trial.") (citing *Allen v. State*, 47 S.W.3d 47, 50–51 (Tex.App.-Fort Worth 2001, pet. ref'd)).[4] Thus, it does not appear that the San Antonio Court has yet decided whether the trial court must *sua sponte* submit a reasonable doubt instruction on extraneous offenses in the guilt-innocence charge.

The Dallas Court likewise has not plainly stated that a trial court must do so. In *Carter*, the Dallas Court reviewed a *pro se* response to an *Anders* brief[5] which raised the issue in the context of an ineffective assistance of counsel claim. *See Carter v. State*, 2004 WL 2985144, at *1, 2004 Tex. App. LEXIS 11539 at *1–3 (Tex.App.-Dallas Dec. 28, 2004, no pet.). The Dallas Court concluded that this was an "arguable issue" and remanded the appeal to the trial court for the appointment of new counsel to file a brief on the merits. *Id.* 2004 WL 2985144, at *1, 2004 Tex.App. LEXIS 11539 at *8–9. The Dallas Court suggested that new "counsel should discuss the lack of jury instructions regarding the burden of proof for evidence of extraneous offenses introduced at trial and any other grounds that might arguably support the appeal." *Id.* However, the Dallas Court has not reached the merits of this issue.[6]

We disagree with the courts which have concluded that a trial court has no *sua sponte* duty to submit a reasonable doubt

---

**4.** The Fort Worth Court held in *Allen:*
If extraneous offense or bad acts evidence is before the jury, regardless of whether such evidence was introduced at the guilt-innocence or punishment phase, article 37.07, section 3(a) requires that the jurors be instructed not to consider such extraneous offenses or bad acts in assessing the defendant's punishment unless they find the defendant culpable for such offenses or acts under the statutorily prescribed reasonable-doubt standard.

*Allen v. State*, 47 S.W.3d 47, 50 (Tex.App.-Fort Worth 2001, pet. ref'd).

**5.** *See Anders v. Cal.*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400,18 L.Ed.2d 493 (1967).

**6.** For reasons unknown, newly appointed counsel in *Carter* chose not to raise this "arguable issue" on resubmission. *See Carter v. State*, 2004 WL 2985144, at *1 n. 1, 2005 Tex.App. LEXIS 6866 at *1 n. 1 (Tex.App.-Dallas Aug. 24, 2005, no pet. h.).

instruction on evidence of extraneous offenses in the guilt-innocence charge when such evidence is admitted. We hold that the requirement that extraneous offenses be proved beyond a reasonable doubt is the "law applicable to the case" when evidence of extraneous offenses is admitted during the guilt-innocence phase. "As this was 'law applicable to the case,' appellant was not required to make an objection or request ... in order for the trial court to instruct the jury" on this requirement. *See Huizar*, 12 S.W.3d at 484; *contra Rodriguez*, 137 S.W.3d at 231; *Gilbert*, 2003 WL 22176625, at *4, 2003 Tex.App. LEXIS 8158 at *12; *Salazar*, 2002 WL 246642, at *3, 2002 Tex.App. LEXIS 1335 at *10–11.

█ Here, the evidence of extraneous offenses was provided by the testimony of the sexual assault nurse examiner and by the information about the allegations against Rodgers contained in the CPS file, both of which referred to sexual assaults committed against the complainants in a manner other than alleged in the indictment.[7] Because evidence of extraneous offenses was admitted during the guilt-innocence phase, the trial court had a duty to *sua sponte* submit an instruction in the guilt-innocence charge that this evidence could not be considered unless the jurors were convinced beyond a reasonable doubt that Rodgers had committed the extraneous offenses shown. Because the court failed to submit such an instruction, we must conduct a harm analysis.

In *Rodriguez*, *Gilbert*, and *Salazar*, the courts did not conduct harm analyses because they found no error in the charge. *See Rodriguez*, 137 S.W.3d at 231; *Gilbert*, 2003 WL 22176625, at *4, 2003 Tex.App.

LEXIS 8158 at *12; *Salazar*, 2002 WL 246642, at *3, 2002 Tex.App. LEXIS 1335 at *10–11. Conversely, the Texarkana Court, even though it did not hold that a trial court has a *sua sponte* duty to submit a reasonable doubt instruction in the guilt-innocence charge regarding evidence of extraneous offenses, did review the record to see whether the appellant had suffered "egregious harm" under *Almanza*[8] because of the trial court's failure to submit such an instruction. *See Shanks v. State*, 13 S.W.3d 83, 87 (Tex.App.-Texarkana 2000, no pet.).

█ Rodgers concedes that because he failed to object to this omission he cannot obtain reversal unless he suffered "egregious harm." *See* TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981); *Shanks*, 13 S.W.3d at 87; *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985). The issue is whether Rodgers was harmed by the improper omission of the instruction, not by the admission of evidence of extraneous offenses. *See Ellison v. State*, 86 S.W.3d 226, 228 (Tex.Crim.App.2002). In evaluating harm, we consider "the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *Martin*, 42 S.W.3d 196, 200 (Tex.App.-Fort Worth 2001, pet. ref'd); *accord Ellison*, 86 S.W.3d at 228.

The evidence in question was admitted through the testimony of the sexual assault nurse examiner and notations in the CPS file. However, the references to the extraneous offenses in the CPS file were

---

7. The testimony that Rodgers sexually assaulted the complainants in the manner alleged in the indictment on more than one occasion does not constitute evidence of extraneous

offenses. *See Shea v. State*, 167 S.W.3d 98, 104 (Tex.App.-Waco 2005, pet. filed).

8. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1985).

not mentioned in testimony. Neither party otherwise emphasized the extraneous offense evidence in testimony or argument, although Rodgers's counsel encouraged the jury to review the CPS file in support of the defense's theory that the complainants were exposed to inappropriate sexual behavior by their mother and her paramours and were never sexually assaulted by Rodgers. The State responded by "inviting" the jury to look at the CPS file because the State was "not going to hide anything." The State encouraged the jury to consider the CPS file and see (1) the difficulties the complainants' mother was experiencing during the pertinent time periods, (2) the fact that none of the allegations against her were substantiated, and (3) the fact that the children were never removed from her care by CPS.

 Because Rodgers admitted the CPS file in evidence *without redaction or limitation*, because neither party placed emphasis on the evidence of extraneous offenses contained in the CPS file, and because neither party made further reference to the brief testimony of the sexual assault nurse examiner regarding extraneous offenses against M.E., we cannot say that Rodgers suffered "egregious harm" because of the court's failure to submit a reasonable doubt instruction with regard to the evidence of extraneous offenses admitted during the guilt-innocence phase. *See Martin*, 42 S.W.3d at 201 (no egregious harm where "any consideration of those bad acts by the jury in assessing punishment was at least partially prompted by defense counsel's urging"). Accordingly, we overrule Rodgers's second issue.

### Punishment Charge

 Rodgers contends in his first issue that he suffered egregious harm because the court failed to *sua sponte* instruct the jury that it could not consider evidence of extraneous offenses in assessing punishment unless the jury was satisfied that the extraneous offenses had been proved beyond a reasonable doubt.

The court erred by failing to *sua sponte* submit a reasonable doubt instruction regarding evidence of extraneous offenses in the punishment charge. *Ellison*, 86 S.W.3d at 227; *Huizar*, 12 S.W.3d at 484. Because there was no request or objection, the only issue to be determined is whether this error caused Rodgers to suffer "egregious harm." *Ellison*, 86 S.W.3d at 228; *Martin*, 42 S.W.3d at 200.

Here, Rodgers's 40–year sentences were significantly less than the 70–year sentences sought by the State. *See Tabor v. State*, 88 S.W.3d 783, 789 (Tex.App.-Tyler 2002, no pet.) (no egregious harm where jury sentenced defendant to 15–year sentence though State argued for maximum 20–year sentence). As with the guilt-innocence phase, the prosecutor did not refer to the evidence of extraneous offenses in his punishment argument. *See Bolden v. State*, 73 S.W.3d 428, 432 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (no egregious harm where prosecutor did not emphasize evidence of extraneous offense in argument); *cf. Allen*, 47 S.W.3d at 52–53 (no egregious harm even though prosecutor placed great emphasis on evidence of extraneous offenses). Finally, we note again that Rodgers was the primary source for the evidence in question because he offered the CPS file in evidence. *See Martin*, 42 S.W.3d at 201 (no egregious harm where defense counsel prompted jury to consider extraneous offenses).

Accordingly, we cannot say that Rodgers suffered egregious harm because of the court's failure to submit a reasonable doubt instruction in the punishment charge concerning evidence of extraneous offenses

admitted during the guilt-innocence phase. Thus, we overrule Rodgers's first issue.

We affirm the judgment.

GRAY, C.J., concurred in the judgment.