NO. 03-13-00601-CR

IN THE COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

ORIGINAL

Jose Godinez Matute, Appellant

v.

The State of Texas, Appellee

FILED IN
COURT OF CRIMINAL APPEALS

MAR 03 2015

Abel Acosta, Clerk

FROM THE DISTRICT COURT OF TRAVIS COUNTY. TEXAS

147TH JUDICIAL DISTRICT

NO. D-1-DC-12-202260

HONORABLE CLIFFORD BROWN

JUDGE PRESIDING

APPELLANT'S

PETITION FOR

DISCRETIONARY REVIEW

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 02 2015

Abel Acosta, Clerk

Jose Godinez Matute

TDCJ #01879418

Wallace Unit

1675 S. FM 3525

Colorado City, Texas, 79512

DISCRETIONARY REVIEW CONDITIONALLY REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

Texas Court of Criminal Appeals
P.O. Box 12308
Austin. Texas. 78711

Texas Court of Appeals
Third District
Austin, Texas

The District Court ofTravis County
147th Judicial District
Honorable Clifford Brown
Judge Presiding

Appellant's Appeals Counsel
Kristen Jernigan
Attorney at Law
207 S. Austin Ave.
Georgetown, Texas, 78626

District Attorney
Rosemary Lehmberg
Criminal Justice Center
509 W. 11th St.
Austin, Texas, 78701

In The 403rd Judicial Court of
Travis County. Texas

# Table of Contents

page

Identity of Parties and Counsel     2

Table of Contents     3

Index of Authorities     4

Request for Discretionary Review     5

Statement of the Case     5

Issues Presented     6

Statement of Facts     6,7

Summary of the Argument     7-9

Argument with Supporting Authorities     9-11

Prayer for Relief     11

Appendix     11

# Index of Authorities

page

5 Texas Rules of Appellate Procedure, Rule 2

5 Tex. Penal Code §22.021(a)(1)(B), (a)(2)(B)

6,8 Tex. R. Evid. 103,401,403, 404(b),405, 806, 1002

6 Tex. R. Court Relevancy Rule 404(a), (1), (b)

7 Tex. Code Crim. Proc. Ann. Art. 36.14, 36.19(Vernon's 2004)

7,8,11 Rodgers v. State, 180 S.W. 3d 716(Tex. App-Waco 2005, no pet.)

8 VTCA Penal Code §§37.02, 37.03, 37.04(a)

8 Tex. Rules Court Hearsay Rules 801,803,805,806

9 Haley v. Dretke,376 F. 3d 316

9 U.S. v. Jones, 900 S.W. 2d 392

9 Tex. Prac. Goode, Wellborn, Shalot Rule 201(g),(f), 80

9,10 Tex. Code Crim. Proc. Ann. Art.36.19 (Vernon 2004), 36.14-36.18

10 Huizar v. State, 12 S.W. 3d 479(Tex. Crim. App. 2000)

10 Alamanzar v. State, 686 S.W.2d 157,171 (Tex. Crim. App. 1985)

10 Guevara v. State, 152 S.W. 3d 45, 52-54(Tex. Crim. App. 2004)

10 Middleton v. State, 125 S.W.3d 450, 453(Tex. Crim. App. 2003)

TO THE HONORABLE JUSTICE OF SAID COURT:

I, Jose Godinez Matute, Appellant, by and through himself, pro-se in the entitled and styled cause respectfully requests this Honorable Court reconsider's the true facts outlined in this Petition For Discretionary Review. In doing so, the Court of Appeals overturns the verdict. Due to the overwhelming lack of relevant evidence pertaining to the issues, that the verdict is clearly wrong and unjust. To **Rule 2** of the **Texas Rules of Appellate Procedure**, for allowing filing of fewer copies of the Petition For Discretionary Review to be filed with the Court of Criminal Appeals. Also to inform the Courts to forward copies to the Prosecutor on appeal and the State Prosecuting Attorney, due to the fact that the Appellant does not have access to a photo copier.

## Statement of the Case

The Appellant, Jose Godinez Matute was indicted with aggravated sexual assualt of a child. See Tex. Penal Code §22.021(a)(1)(B),(a)(2)(B). The trial took place on 23 August 2013, 403rd Judicial District Court. The State elected to waive Counts II, III, IV, and V of the Indictment. The Court found the Appellant guilty of One Count of Aggravated Sexual Assault of a Child by penetrating the child's sexual organ. The jury was elected for punishment with the option of a minimum of 5 years probation. The jury imposed the sentence of 30 years in the Texas Department of Criminal Justice on August 23, 2013. The Appeals Attorney, Kristen Jernigan, filed for Notice of Appeals. As of November 26, 2014, the Court of Appeals judgement was affirmed.

## Issues Presented

•Issue One: The trial court committed egregious error by failing to sua sponte included a instruction on the burden of proof as to extraneous offenses in the guilt-innocence phase of the trial.

•Issue Two: The trial court committed egregiuos error by failing to sua sponte include an instruction on the burden of proof as to extraneous offenses in the punishment phase of the trial.

•Issue Three: The State did not prove beyond a reason of doubt clear and convincing, "Legal Sufficiency of the Evidence", to show that the Appellant "intentionally or knowingly" commit aggravated sexual assault of a child, Tex. Penal Code §22.021(a)(1)(B)(i),(a)(2)(B).

•Issue Four: The court erred in not allowing the Appellant to present the video tape of the interrogation between Detective Bonilla and the Appellant. Which if viewed by the jurors could have affected a different outcome of the case, **Tex. R. Evid. 103, 401, 403, 404(b), 405, 806, 1002; Tex. R. Court Relevancy Rule 404(a),(1),(b)**

## Statement of the Facts

Ms. Joanna Ramirez is the mother to B.A., the alleged victim. On 04/21/2012, Ms. Ramirez endangered her 11 year old child by not providing the proper parental supervision, to allow her child to enter a black vehicle with an **unknown** male driver. Which calls into question on Ms. Ramirez's parental skills to provide a safe environment for her child. The victim was reported approximately 6:48 pm. Approximately an hour later, the victim was walking back to the apartment, 2205 Muroc St. #104, Austin, Texas. The victim took the officer to the scene where the sexual assualt had taken place. The officer took into evidence an open **empty** condom wrapper that was found at the scene of the apparent crime.

During the investigation, Ms. Ramirez gave an unknown phone number, (405-537-3339), that appeared on her call history for her cell phone. The victim was taken to a Sexual Assault Forensic nurse for a SAFE examination. The victim stated that she had sex with another Suspect, (Javier).

The unknown number was registered to the Appellant, the victim talk to a suspect Antonio through Facebook and through the Appellant's cell phone. At the Center for Child Protection, on 4/24/2012, the victim stated that she also knows another person as "Carlos Pinto", (known as Concepciam Martinez Pinto). The victim confirmed that she had sex with Antonio.

Detective Kelly and Detective Watts went to the victims school, (Burnet Middle School), where one of the victims school friend stated on 4/25/2012, the victim told her that she had two boyfriends, Antonio and Pinto.

The Grand Jury originally presented this indictment, in the County of Travis, and State of Texas, Five Counts of Sexual Assault of a child younger than 17 years of age. Four of the Five indictment counts were dropped.

## Summary of the Arguments

The trial court did egregiously err by not instructing the jury on the burden of proof as to extraneous offenses: **Tex. Code Crim. Proc. Ann. Art. 36.14 and 36.19. (Vernon's 2004)**, governs the Court's duty to give instruction to the jury which also includes the correct laws applicable to the case, and a standard review if this is breached.

The Court in **Rodgers v. State, 180 S.W. 3d 716 (Tex. App.-Waco. 2005 no pet.)**, decided that a trial judge must instruct the jury as to the burden of proof at the guilt-innocence phase of a trial regardless of whether the instruction was requested by the defendant.

7

In this case, adopting the position set forth above, the trial court erred in failing to give the sua sponte instruction on burden of proof as to give the sua sponte instruction on burden of proof as to extraneous matters. The State submitted extraneous evidence that affected the course on the outcome of official proceeding, VTCA. Penal Code §§37.02, §§37.03, §§37.04(a), which resulted in erraneous ruling, Tex. Rules of Court, Rules of Evidence 103. The Appellant did suffer egregious harm due to the extraneous evidence against him, requiring an aquittal or a new trial as to guilt-innocence phase.

The State had admitted that the trial court did erred during the punishment by not instructing the jury, sua sponte on the burden of proof for extraneous offenses. The State had noted that the Appellant was facing up to 99 years, with the minimum of 5 years probation, which was eliminated when the wittness's testified on hear-say from the victim with no creditable evidence from the State. It is the court's responsibility to give instructions to the jury, under Tex. Rules Court, Hearsay Rules 801,803, 805, and 806. Also including the correct laws applicable to the case and the standard of review if the duty is breached. At punishment, the court had a duty to instruct the jury that the State had the burden of proof without reason of doubt on the extraneous accusations from the State and the victim, whether or not the instructions were requested. The trial court breached these standards which affected the introduction of extraneous matters in the punishment. The punishment egreiously harmed the Appellant, requiring a sentence reduction or a reversal for a new punishment hearing. Unless extraneous issues results in an aquittal or a new trial. The victim impeached her own testimony with conflicting statements. about having multiple sexual history with multiple perpetrator's

which calls into question on the Appellants Actual Innocence addressed in Haley v. Dretke, 376 F. 3d 316. If her statements were true than the other perpetrator's would have also been indicted. The evidence the State submitted did not show any relevancy to the offense charged. In U.S. V. Jones, 900 S.W. 2d 392,(the Court of Appeals Sixth Circuit). The trial judge entered a judgement of an acquittal, on the grounds that there had been no proof by evidence. Tex. Prac. Goode, Wellborn, and Shalot, Rule 201(g), (f), 80.

## Arguments with Supporting Authorities

Because it is Appellant's view that a trial court's duty to properly instruct the jury on the law is the same at the guilt/ innocence phase of the trial and the punishment phase of the trial. It is also the Appellant's view that the State lacked the proper evidence to prove to the jury, without a reason of doubt, that the Appellant did not execute the offense, but that there was evidence to prove that the multiple perpetrator's had committed the offense.

Since Appellant's complaint with the trial court's charge is Art. 36.14 error, the standard of review is set out in Tex. Code Crim. Proc. Ann. Art. 36.19(Vernon 2004).

Art. 36.19 states: "Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17, and 36.18 has been disregarded; the judgement shall not be reversed unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair or impartial trial.

Failing to charge on the burden of proof of the State as to extraneous character evidence is subject to the same type of harm

harm analysis as any other charge error under Art. 36.19; Huizar v. State, 12 S.W. 3d 479 (Tex. Crim. App. 2000), because instructions on the burden of proof as to extraneous offense/bad act character evidence are part of the law of the case under the common law, the trial court is required to give such an instruction sua sponte. In Rodgers v. State 180 S.W. 3d 716, 722-725 (Tex. App.-Waco 2005, no pet.), this court concluded that even without a request for a specific instruction or an objection the burden of proof instruction as to extraneous matters is part of the law of the case and is necessarly to be included in the instruction to the jury if such evidence is admitted. This court went on to say that an Appellant need not have objected at trial to raise the error on appeal. Applying Huizar reasoning, this Court opinioned that the import of objecting to the absence of the burden of proof instruction extends only to deciding the application standard for harm analysis.

The Texas Court of Criminal Appeals Has thus far not ruled on whether a trial court is required to give such an instruction sua sponte in the guilt/innocence phase of the trial.

Recently, the Texas Court of Criminal Appeals reiterated that Alamanzar v. State, 686 S.W. 2d 157, 171 (Tex. Crim. App 1985), is the standard under which charge error is analized, and that preservation of error is not an issue preventing review, but is only an issue as to the level of harm analysis to apply Guevara v. State, 152 S.W.3d 45, 52-54 (Tex. Crim. App 2004); Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App 2003).

In a case originating from the same trial court, this court has also recently ruled that the type of error is presented in the instant case are subject to the Huizar reasoning; Rodgers v. State 180 S.W. 3d 716 (Tex. App-Waco 2005, no pet.)

There is a split in the intermediate Appellate Courts of Texas as to whether or not Huizar analysis applies to the guilt/innocence phase of the trial. Some court's have declined to require a sua sponte instruction. This Court has ruled specifically on this issue in Rodgers v. State, 180 S.W.3d 723-724, holding that the trial was not fair and that the case should be acquitted with records expunded, or granted a new trial entirely.

## Prayer For Relief

The Appellant prays that the Court of Appeals acknowledges the Mailbox Rule and the 9.2 Rule, due to the insufficient mail system at the Wallace Unit, Colorado City, Texas. The Appellant also prays that the Court of Appeals grants this Petition For Discretionary Review and that they can set aside the jury's verdict, for it was so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong  and unjust.

## Appendix

The Court of Appeals affirmed the judgement, their opinion was delivered and filed on November 26, 2014. The Appellant has highlighted how the victim's own conflicting statements impeached her own testimony.

Respectfully submitted
on February 23, 2015
Jose Godinez Matute
TDCJ #01879418
Wallace Unit
1675 S. Fm 3525
Colorado City, Texas, 79512

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00601-CR

Jose Godinez Matute, Appellant

v.

The State of Texas, Appellee

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-12-202260, HONORABLE CLIFFORD BROWN, JUDGE PRESIDING

---

## MEMORANDUM OPINION

Jose Godinez Matute was charged with aggravated sexual assault of a child by penetrating the child's sexual organ. *See* Tex. Penal Code § 22.021(a)(1)(B), (a)(2)(B). At the time of the alleged offense, Matute was in his twenties, and the victim, B.A., was eleven years old. After a trial, the jury found Matute guilty and assessed his punishment at 30 years' imprisonment. *See id.* §§ 22.021(e) (providing that offense is first-degree felony), 12.32 (setting out punishment range for first-degree felony). In two issues on appeal, Matute challenges the legal sufficiency of the evidence supporting his conviction and asserts that the district court erred by allowing a witness to testify "regarding an interrogation without requiring the State to present the best evidence of that interrogation." We will affirm the district court's judgment of conviction.

### Legal Sufficiency of the Evidence

In his first issue on appeal, Matute challenges the legal sufficiency of the evidence supporting his conviction. As set out above, Matute was charged with aggravated sexual assault of

a child. Under the Penal Code, an individual commits that offense if he "intentionally or knowingly . . . causes the penetration of the anus or sexual organ of a child by any means" and "if the victim is younger than 14 years of age." Tex. Penal Code § 22.021(a)(1)(B)(i), (a)(2)(B).

Under a legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

During the trial, B.A., B.A.'s mother, various law-enforcement personnel, and Matute all testified regarding the alleged offense. In her testimony, the victim's mother, J.R., testified that at the time of the alleged offense, her daughter was eleven years old, was in special-education classes, and had been diagnosed with various learning disabilities. Regarding the offense, she explained that she called the police after someone from her neighborhood told her that B.A. had gotten into "a black car" with a man. In addition, J.R. related that when she scanned the call history for her cell phone, she noticed that B.A. had used the phone to call someone, and she stated that she

2

repeatedly called the number to find out if the person knew where B.A. was and gave the number to the police. Moreover, she testified that during one of the calls, a man answered but that he denied knowing B.A. Further, J.R. explained that eventually B.A. returned home looking scared and that the police immediately questioned her about where she had been.

After J.R. finished her testimony, B.A. was called to the stand. In her testimony, B.A. often answered questions by stating that she did not know or had forgotten the answer, but she recalled that she called Matute on the phone,[1] asked him to pick her up, and got into his black car. Further, she explained that there was a child's car seat in the back of the car. In addition, she testified that after she got in the car, Matute drove to various hotels but that he was unable to check into one because he did not have any identification. Moreover, she mentioned that Matute was trying to get a hotel room in order to have sex with her and generally described in terms consistent with her age that sex involves "private parts" touching and touching on the "inside" of her "private part." Next, she stated that she had sex with Matute outside of the car behind some apartments, and she described the positions of their bodies, stated that it felt "weird" when his "private part" touched hers, and recalled that he used a condom during the incident. After describing the alleged offense, B.A. stated that Matute dropped her off at a corner, that she walked the rest of the way home, that there were police officers present when she returned home, and that she directed one of the officers to where she had had sex with Matute. Later, B.A. testified that she told the officer that Matute was

---

[1] In her testimony, B.A. referred to the person that assaulted her as Antonio. However, she also pointed out Matute and identified him as the person that she knew as Antonio. For that reason, we will refer to Matute when summarizing her testimony.

3

not the first person that she had sex with and that she had previously had sex with Matute's cousin Javier four days before the incident at issue.[2]

Next, one of the responding officers, Officer Jennifer Szimanski, testified that J.R. informed her that a man had been calling on the phone for B.A. for over a week. In addition, Officer Szimanski explained that she questioned B.A. about the incident, and Officer Szimanski recalled that B.A. was scared and told her that "he came to do sex with me," that Matute picked her up in a black four-door car, that Matute drove to several hotels but was unable to get a room because he had no identification, that he took her to a parking lot behind one of the hotels to have sex, and that Matute wore a condom. Next, Officer Szimanski testified that she asked B.A. if she could guide her to where the incident occurred, that B.A. directed her to a parking lot, and that there was a condom wrapper in the parking lot.

After Officer Szimanski concluded her testimony, the sexual-assault nurse examiner that examined B.A., Kathleen Gann, testified regarding the events that occurred after Officer Szimanski drove B.A. to the hospital. In her testimony, Gann recalled what B.A. told her of the events, including that "the suspect wanted to have sex," that they had sex, that "he touched her butt," and that he touched her in her "private part . . . with his thing. It felt awkward because no one ever touched [her] like that." In addition, although Gann explained that it was initially difficult to get B.A. to talk about what had happened, she also revealed that B.A. identified a penis on a male diagram and stated that

---

[2] On cross-examination, B.A. admitted that she did not mention having sex with Javier when she talked to the prosecutors, but she later explained that she did not remember that when the prosecutors initially questioned her. In addition, Matute questioned B.A. regarding whether she mentioned Javier when she was examined by the sexual-assault nurse examiner.

the suspect touched her "where she peed from and where she pooped from" with his penis and that the suspect gave her a hickey on her neck. Regarding the exam that she performed, Gann testified that B.A. had a hickey on her neck, that B.A. had various tears on her genitals, and that B.A. had a tear on the perineum, which is the area between the vagina and the anus, that was "oozing blood." Moreover, Gann explained that the injuries that she observed were consistent with B.A.'s recollection of the events and that the tear to the perineum was recent and consistent with "blunt trauma to her genital area earlier that afternoon." When questioned about the possibility that the injuries could have resulted from a previous sexual encounter occurring four days earlier, Gann related that given that the areas involved heal quickly, particularly at B.A.'s age, it was unlikely those injuries would still be present.

In addition to this testimony, various law-enforcement personnel were called to testify regarding the investigation and regarding testing that was done on the evidence collected. First, Detective Brent Kelly testified that after obtaining phone records for J.R.'s cell phone, he learned that the phone number that J.R. called after B.A. went missing was registered to a phone belonging to Matute. Moreover, Detective Kelly explained that the phone records showed that several calls were made between Matute's phone and J.R.'s phone in the days leading up to the incident. In addition, Detective Trent Watts related that Matute had that phone on him when he was questioned by the police. Further, Detective Peter Bonilla stated that when he was questioning him, Matute admitted that he owned a black Toyota Corolla, that he knew B.A., and that she got into his car.

Regarding testing performed on the evidence, Tyler Belknap stated that he tested the condom wrapper for latent fingerprints. Before discussing the results of the testing, Belknap

recalled that when he obtained fingerprints from Matute, "there was some sort of injury to all of [his] fingers" and that injuries "impair the analysis and comparison process." In light of this explanation, he testified that in the first analysis that he performed, "the known fingerprints were incomplete to the latent print" obtained from the condom wrapper, meaning that "the area needed for comparison had some sort of injury to it which didn't allow [him] to either exclude or identify the person in question." Similarly, during his cross-examination, Belknap testified that another individual in his department obtained a similarly inconclusive result. However, Belknap also explained that when he later used other known fingerprints for Matute, he "could immediately see that the quality of the fingerprints were much better and would probably yield a better comparison." In fact, Belknap explained that in his second round of testing, he was able to identify Matute's right thumb print on the condom wrapper.

In addition to testimony regarding fingerprints, various officials testified regarding testing done on biological samples taken from B.A. and Matute after the alleged offense. First, Sapana Prajapati testified that swabs taken of B.A.'s external genitals and anal region as well as her shorts and underwear had blood in them. Further, she explained that she tested a swab taken from B.A.'s neck and determined that Matute could not "be excluded as a contributor to" that sample. In fact, she stated that "[t]he probability of selecting an unrelated person at random that could be a contributor to this profile is approximately . . . 1 in 27.49 million for Hispanics." Next, Lindsey Ayers testified that she tested pieces of hair collected from B.A.'s underwear. Specifically, she stated that the hair appeared to be pubic hair and related that although the test was "a limited comparison," it was her opinion that the hair recovered from the underwear could have come from

6

Matute because the hair was "microscopically similar" to pubic hair later retrieved from Matute. Then, Emma Becker explained that she performed DNA testing on the pubic hair recovered from B.A.'s underwear and revealed that the first test that she performed did not identify Matute as a contributor but that more sensitive testing that she performed later and that directly looks for Y chromosomes revealed that the recovered hair "is consistent with the . . . profile of" Matute and that Matute could not be excluded as the contributor of the DNA.

Finally, after the State rested, Matute elected to testify. In his testimony, Matute acknowledged that he knew B.A. and that he met her on the day of the alleged assault at a "washateria" because her boyfriend had asked him to give her a ride to a party. Moreover, he explained that B.A. kept trying to get close to him and admitted that he kissed B.A. on her cheek at her request, but he insisted that nothing else happened. Further, Matute called B.A. a liar and said that "[s]he likes to go with different men." On cross-examination, he admitted that at the time of the offense, he drove a black car that had car seats in the back for his young children.

In light of all of the evidence summarized above, including the testimony of B.A. and Matute, as well as the reasonable inferences that the factfinder could have made from that evidence and given that the standard of review for legal-sufficiency challenges obligates appellate courts to defer to the factfinder's resolution of conflicts in the testimony and to review the evidence in the light most favorable to the verdict, see Jackson, 443 U.S. at 319; Clayton, 235 S.W.3d at 778; Hooper, 214 S.W.3d at 16-17; we conclude that the evidence was legally sufficient to support the district court's judgment of conviction. Accordingly, we overrule Matute's first issue on appeal.

**Best Evidence**

In his second issue on appeal, Matute contends that the district "court erred in allowing testimony regarding an interrogation without requiring the State to present the best evidence for that interrogation." *See* Tex. R. Evid. 1002. Specifically, Matute refers to portions of the testimony from Detective Bonilla in which he described his questioning of Matute and insists that the video of the interrogation should have been admitted instead. Moreover, Matute insists that the district court's ruling was improper because if the video of the interrogation had been admitted, "the jury could have seen [Matute] repeatedly denying that he committed any crime, despite Bonilla's tactics as an investigator." Matute argues that he was harmed by the district court's ruling for the same reason.

We review a trial court's ruling on the admission of evidence under an abuse-of-discretion standard of review. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside the zone of reasonable disagreement, *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is arbitrary or unreasonable, *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the trial court's ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

When Matute argued during the trial that the best evidence of what Detective Bonilla said and observed was the video of the interrogation, the district court explained that it was unnecessary to admit the video because Detective Bonilla was "here testifying." The court of criminal appeals has confronted a similar issue before. *See Burdine v. State*, 719 S.W.2d 309 (Tex. Crim.

8

App. 1986), *superseded in part on other grounds by rule change as stated in Barnes v. State*, 876 S.W.2d 316, 325-26 (Tex. Crim. App. 1994) (explaining that Rules of Evidence 401, 402, and 403 were modified since holding in *Burdine*). In *Burdine*, Burdine argued that "his oral statement made to police officers should not have been admitted in evidence, because the statement was offered in the form of the officers' testimony rather than the tape recording made at the time the statement was given." *Id.* at 318. Although the court decided that the best-evidence rule in effect at the time did not apply to electronic recordings, it also commented that even if it did, Burdine's claim would not be sustained because the issue was "the contents of the *conversation* on the recording, and not the recording itself. Since [the police officer] participated in the conversation, his testimony describing the interrogation was sufficient for best evidence purposes." *Id.* at 318 n.5.

More recently, our sister court of appeals issued an opinion agreeing with the reasoning in *Burdine*. *See Cox v. State*, No. 05-11-00687-CR, 2012 Tex. App. LEXIS 5380 (Tex. App.—Dallas July 9, 2012, pet. dism'd) (not designated for publication). In *Cox*, Cox argued that the trial court erred by allowing a witness to testify regarding events that he "observed on the closed-circuit television monitor when . . . the best evidence was a video recording of the events that had been generated by the closed-circuit television monitoring system." *Id.* at *3-4. However, the court determined that the witness:

> testified concerning what he observed on the closed-circuit television monitor as it occurred. . . . That events observed by [the witness] on the closed-circuit television monitor could have been copied to a compact disc and preserved does not alter the fact that [the witness] testified concerning what he observed in real time. [The witness]'s testimony regarding his observations of the events as they occurred as depicted on the closed-circuit television monitor is not testimony regarding, or dependent upon, a videotape recording.

9

*Id.* at \*9-10.

In addition, federal courts interpreting the federal version of the best-evidence rule have reached similar results. *See* Fed. R. Evid. 1002 (requiring original recording "in order to prove its content unless these rules or a federal statute provides otherwise"); *see, e.g., United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) (concluding that witness's testimony when he did not observe alleged actions violated best-evidence rule and noting that rule applies when witness seeks to testify about contents of recording, particularly where witness was not privy to events on recording); *United States v. Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996) (explaining that "a tape recording cannot be said to be the best evidence of a conversation when a party seeks to call a participant in or observer of the conversation to testify to it. In that instance, the best evidence rule has no application at all"); *United States v. Fagan*, 821 F.2d 1002, 1009 n.1 (5th Cir. 1987) (characterizing as "completely without merit" best-evidence argument that sheriff should not testify regarding his recollection of interview because interview was taped and stating that rule was inapplicable where prosecution was trying to prove contents of conversation rather than contents of recording); *United States v. Gonzales-Benitez*, 537 F.2d 1051, 1053-54 (9th Cir. 1976) (noting that argument that tape recording of conversation should have been introduced instead of allowing participant to testify was puzzling and misconstrued purpose of best-evidence rule and explaining that although tape recording would have been admissible as evidence of conversation, "testimony by participants was equally admissible and was sufficient to establish what was said").

In light of this authority, we cannot conclude that the district court abused its discretion by overruling Matute's best-evidence objection during trial or by allowing Detective Bonilla

10

to testify without requiring the State to introduce the video of the interrogation. Accordingly, we overrule Matute's second issue on appeal.

## CONCLUSION

Having overruled Matute's two issues on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed: November 26, 2014

Do Not Publish

11

Jose Godjñez Matute
TDCJ #01879418
Wallace Unit
1675 S. FM 3525
Colorado City, Texas, 79512

LEGAL MAIL

787113:2308 B005

Texas Court of Criminal Appeal's
P.O. Box 12308
Austin, Texas, 78711