**Dontae ROBINSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 10–98–194–CR.

Court of Appeals of Texas, Waco.

June 21, 2000.

Richard E. Langlois, San Antonio, for appellant.

Susan Dolan Reed, Crim. Dist. Atty., Kevin Michael O'Connell, Asst. Crim. Dist. Atty., John Scott Roberts, Asst. Crim. Dist. Atty., Bexar County, San Antonio, for appellee.

Before Chief Justice DAVIS, Justice GRAY, and Chief Justice FRANK G. McDONALD (Retired).

## OPINION

FRANK G. McDONALD, Chief Justice (Retired).

Appellant Robinson appeals his conviction for felony possession of cocaine with intent to deliver, for which he was sentenced to 75 years in the Institutional Division of the Texas Department of Criminal Justice.

On November 27, 1997, Officer Stromboe was patrolling in San Antonio when he saw a car, speeding toward him, run a stop sign. Officer Stromboe turned his vehicle around and tried to catch up with the speeding car. He followed the car several blocks when he saw the car come to a stop in a driveway. The officer stopped and approached the vehicle with his gun drawn. Stromboe testified that he could

smell marihuana when he came near the car. He also saw what he believed was crack cocaine between the passenger's feet, and noticed the driver's hand inside the center console. Stromboe told Appellant to show his hands. The console of the car had a compartment below the gearshift and inside were two guns and eleven individually -wrapped packages of crack cocaine. Appellant had $851 in cash on his person. A mask was found in the car. Tests of the first two bags resulted in 4.2 grams of cocaine. Tests stop when over four grams are reached. The chemist estimated the eleven bags weighed from 20 to 24 grams.

Appellant testified that the vehicle he was driving was not his; that he saw Officer Stromboe when he stopped at a stop sign; that the officer recognized him from a prior contact and began following him; that he followed all the rules and did nothing wrong; and that his hands were always on the steering wheel. He denied he put the cocaine in the hidden compartment; denied knowledge of the hidden compartment; denied the guns were his; denied he had ever owned a gun like the one found in the car; and denied he had ever owned any hollow-point bullets.

On rebuttal Officer Phillips testified that on October 19, 1997, he arrested Appellant for the unlawful carrying of a gun (like the one found in the car Appellant was driving) and that he had recovered hollow-point bullets from Appellant on that date.

Officer Stromboe then testified that two weeks before Appellant's arrest, he had made several arrests at a house where Appellant was staying.

The jury found Appellant guilty of possessing cocaine with intent to deliver. At the punishment phase the State put on evidence that Appellant had been arrested for carrying a gun, for criminal trespass, and for possession of marihuana. Deputy Harris testified that Appellant was an associate of Blood gang members and a member of the Sky Line Posse gang; that the primary function of the Sky Line Posse gang was to traffic narcotics; and that the primary purpose of street gangs in general is for narcotics trafficking, drive-by shootings and robberies.

Next, the State called Deputy Ramirez who testified that on April 25, 1997, he arrived at an Exxon Station on Foster Road at 3:00 a.m. and found a black male slumped over in a Lincoln automobile. The man had blood stains on his chest and appeared to be deceased. Dr. DiMaio testified that the man was Mark Robinson who had died of a gunshot wound in the chest.

Detective Damiani testified he was the investigator of the murder of Mark Robinson; that he was put in touch with Alfred Johnson who was in the Bexar County jail; that Johnson was an eyewitness to the murder of Mark Robinson. Damiani found corroboration in Johnson's story from Robert Alzapiedi who was another eyewitness to the murder. Both Johnson and Alzapiedi identified Appellant as the murderer from a photo spread.

The State then called Alfred Johnson who testified he was with Appellant and Appellant's brother, Leroy, on the night of April 25, 1997; that they were riding around in a "geeker" (a car a "crackhead" loaned to his drug dealer in exchange for crack cocaine); that they began bumping a car driven by a black male; that the man then drove into an Exxon station; that Appellant then got out of his car, took out a gun and pointed it into the man's car; and Johnson then heard gunshots; and that Appellant bragged about the shooting after it happened.

The defense called Diane Lynch to the stand. She testified that Appellant lived with her for seven or eights months beginning in January 1997. She also testified that Appellant was shot in the foot in January 1997; that he had some large pins in his foot and that even after the pins were removed Appellant could not walk without crutches; that Appellant and Johnson did not get along; that Appellant

still had pins in his foot in April 1997; and that Appellant's brother, Leroy, was sent to a juvenile-detention facility in March 1997.

Appellant was recalled and testified he was shot in January 1997; had surgery to his right leg; had pins in his foot and could not walk without crutches until June 1997; and also that his brother had been placed in a juvenile-detention facility in March 1997.

On cross-examination Appellant admitted he sold drugs; admitted carrying the weapon that Officer Phillips saw him within October 1997; confessed to his gang affiliation, but denied that he killed Mark Robinson.

The State called Robert Alzapiedi in rebuttal who testified that on the night of April 25, 1997, he was walking past the Exxon station on Foster Road and saw a blue four-door car pull into the station; that next a red sports car drove in; then four or five guys got out and he saw one of them pull out a gun, point it at the window of the blue car, and then heard gun shots. Alzapiedi identified Appellant as the shooter.

The jury assessed Appellant's punishment at 75 years in prison.

By new counsel Appellant appeals on one point of error: "Appellant was denied effective assistance of counsel at his trial."

Specifically, Appellant asserts five allegations of trial counsel's ineffective assistance.

This court, in an opinion delivered August 25, 1999, overruled Appellant's point holding such barred by failure to comply with Rule 33.1(a) of the Texas Rules of Appellate Procedure. The Court of Criminal Appeals in an opinion delivered April 12, 2000 held that Rule 33.1(a) is inapplicable to ineffective assistance of counsel claims, vacated our judgment and remanded the cause to this court for consideration of Appellant's claims on the merits.

The Court of Criminal Appeals has set out the applicable case law in *Thompson v. State*, 9 S.W.3d 808, 812–13 as follows:

## APPLICABLE CASE LAW

■ Texas courts adhere, as we must, to the United States Supreme Court's two-pronged *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), test to determine whether counsel's representation was inadequate so as to violate a defendant's Sixth Amendment right to counsel. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App.1986). The defendant must first show that counsel's performance was deficient, i.e., that his assistance fell below an objective standard of reasonableness. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997); *Ex Parte Menchaca*, 854 S.W.2d 128, 131 (Tex.Crim.App.1993). Second, assuming Appellant has demonstrated deficient assistance, it is necessary to affirmatively prove prejudice. *McFarland v. State*, 928 S.W.2d at 500. In other words, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Hernandez v. State*, 726 S.W.2d at 55. This two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a reliable result. *McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 963 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case. *Ex Parte Scott*, 581 S.W.2d 181, 182 (Tex.Crim.App.1979).

Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *McFarland v. State*, 928 S.W.2d at 500. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Ibid.* Absent both showings an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Ex Parte Menchaca*, 854 S.W.2d at 131. Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Cannon v. State*, 668 S.W.2d 401, 403 (Tex.Crim.App.1984). An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Ex Parte Felton*, 815 S.W.2d 733, 735 (Tex.Crim.App. 1991). However, while this Court has been hesitant to "designate any error as per se ineffective assistance of counsel as a matter of law," it is possible that a single egregious error of omission or commission by appellant's counsel constitutes ineffective assistance. *Jackson v. State*, 766 S.W.2d 504, 508 (Tex.Crim. App.1985) (failure of trial counsel to advise appellant that judge should assess punishment amounted to ineffective assistance of counsel) (modified on other grounds on remand from U.S. Supreme Court, *Jackson v. State*, 766 S.W.2d 518 (Tex.Crim.App.1988)). Se also *Ex Parte Felton*, 815 S.W.2d at 735 (failure to challenge a void prior conviction used to enhance punishment rendered counsel ineffective). This position finds support in opinions of the United States Supreme Court, which has also held that a single egregious error can sufficiently demonstrate ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 2046 n. 20, 80 L.Ed.2d 657 (1984). When handed the task of determining the validity of a defendant's claim of ineffective assistance of counsel, any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App.1984). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994).

■ Appellant's first allegation of ineffective assistance is the failure of his trial counsel to timely request notice of the State's intention to introduce evidence of prior crimes or bad acts. Appellant speculates that if a Rule 404(b) motion had been filed, counsel would have been better prepared for the punishment phase and could have proven Appellant's alibi with the "medical records" and the "detention" records. Appellant had testified that he had pins in his foot on April 25, 1997, and that his brother was in juvenile detention on that date.

■ The record is silent as to why trial counsel did not file a Rule 404(b) motion, and is also silent whether this motion would have made any difference. The medical and juvenile records may just as easily have contradicted Appellant's story. When the record contains no evidence of the reasoning behind trial counsel's action or inaction, the appellate court cannot conclude counsel's performance was deficient. *Jackson*, 877 S.W.2d at 771–72.

■ Appellant's second allegation of ineffective assistance is that trial counsel failed to present a motion to suppress evidence based on an allegedly illegal traffic stop. In this case the record is also silent as to counsel's trial strategy. Therefore, we cannot speculate about the reasons that counsel did not file a motion to suppress. Jackson, 877 S.W.2d at 771. It is possible that counsel determined that filing a mo-

tion to suppress would have been frivolous. Officer Stromboe testified Appellant ran a stop sign in his presence and made a turn without a signal. Having observed these offenses, the officer had probable cause to stop Appellant for traffic offenses. *Owens v. State,* 861 S.W.2d 419, 420 (Tex.App.— Dallas 1993, no pet.). When the officer approached Appellant's vehicle, he smelled marihuana and saw crack cocaine in plain view on the floorboard by the passenger's foot. Appellant has not shown that any motion to suppress would have been successful. *Ryan v. State,* 937 S.W.2d 93, 104 (Tex.App.—Beaumont 1996, no pet.).

■ Appellant's third allegation of ineffective assistance alleges his trial counsel was ineffective by failing to request a limiting instruction requiring the jury to disregard illegally-seized evidence. The failure to request a limiting instruction is a tactical or a strategic decision. *Ryan,* 937 S.W.2d at 104. Counsel could have reasonably concluded that Appellant would be better served with no limiting instructions at all, rather than further emphasizing the evidence that was the subject of the instruction. Given the silence of the record concerning why counsel chose to forego the instruction, this court must presume that counsel made a knowing choice not to request a limiting instruction.

■ In his fourth allegation of ineffective assistance, Appellant alleges trial counsel failed to conduct a sufficient factual investigation to defend against the murder evidence presented at the punishment phase. Specifically, Appellant complains that if counsel had done a better investigation he would have had the medical and detention records to confirm Appellant's alibi.

Appellant presumes that, had counsel secured his medical records and his brother's detention records, they would have confirmed Appellant's alibi. It is equally possible that those records would have impeached Appellant's story and that counsel knew this and did not offer the records for that reason.

Appellant's complaint is not firmly grounded in the record and Appellant has failed to meet his burden to demonstrate his trial counsel's ineffectiveness. *McFarland v. State,* 928 S.W.2d 482, 500 (Tex. Crim.App.1996).

■ Appellant's fifth allegation of ineffective assistance alleges trial counsel failed to adequately explain the extent to which prior unadjudicated bad acts could be used to impeach him.

During the guilt-innocence phase of trial, Appellant took the stand and denied he had any knowledge or familiarity with the kinds of weapons found in his possession on November 27, 1997. The State called Officer Phillips in rebuttal who testified he arrested Appellant in October 1997 for unlawfully carrying the same kind of weapon at issue in this case.

Prior to testifying before the jury, Appellant took the stand and, in answer to questions by his counsel, stated he understood that he had an absolute right to remain silent; that if he took the stand he gave up his right to remain silent, and that the State could cross-examine him and bring up information that it would not otherwise be able to put before a jury. Appellant stated he understood the above and that he would give up his right to remain silent, and he took the stand.

The record thus reflects Appellant was warned that he could be cross-examined about certain things the State would not otherwise be able to put before the jury.

■ All of the allegations of ineffective assistance must be examined in the light of the totality of counsel's representation. *Johnson v. State,* 629 S.W.2d 731, 736 (Tex.Crim.App.1981). In this case counsel conducted a voir dire, cross-examined the State's witnesses, successfully objected to the introduction of evidence, called a witness in Appellant's behalf, and made a favorable closing argument. Ap-

pellant obtained a lower sentence than that being sought by the State or allowed by law. He had a history of gang membership and a misdemeanor record. The evidence of the extraneous offense of murder was compelling. Also the evidence of Appellant's guilt of possession of cocaine with intent to deliver, was overwhelming. He has failed to establish that his counsel was ineffective.

Appellant's point of error and all five contentions made thereunder are overruled. The judgment is affirmed.