IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00325-CR

 

Terry Lee McCormick,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 



From the 54th District Court

McLennan County, Texas

Trial Court No. 2005-390-C

 



MEMORANDUM  Opinion










 

      McCormick appeals his conviction
for indecency with a child with his stepdaughter, E. R., a child younger
than seventeen years of age, by sexual contact, which offense occurred in 1998.[1]  See Act of May 29, 1993, 73d Leg.,
R.S., ch. 900, art. 1, § 1.01, sec. 21.11(a)(1), 1993 Tex. Gen. Laws 3586,
3616 (amended 2001) (current version at Tex.
Penal Code Ann. § 21.11(a)(1) (Vernon 2003)); id. sec.
21.11(c) (amended 2001) (current version at Tex.
Penal Code Ann. § 21.11(d) (Vernon 2003)).  We affirm.

      Charge.  In
McCormick’s first four issues, he complains of the trial court’s charge in the
guilt-or-innocence stage of trial.  Texas Code of Criminal Procedure Article
36.14 provides in relevant part that “in each felony case
. . . , the judge shall . . . deliver to the jury
. . . a written charge distinctly setting forth the law applicable to
the case; not expressing any opinion as to the weight of the evidence
. . . .”  Tex. Code Crim.
Proc. Ann. art. 36.14 (Vernon 1981).

Whenever it appears by the record in any
criminal action upon appeal that any requirement of Article[] 36.14
. . . has been disregarded, the judgment shall not be reversed unless
the error appearing from the record was calculated to injure the rights of
defendant, or unless it appears from the record that the defendant has not had
a fair and impartial trial.

Tex. Code
Crim. Proc. Ann. art. 36.19 (Vernon
2006).

      Our first duty in analyzing a jury-charge
issue is to decide whether error exists.  Then, if we find error, we analyze
that error for harm.  Preservation of charge error does not become an issue
until we assess harm.  The degree of harm necessary for reversal depends on
whether the appellant preserved the error by objection.  Under Almanza, jury
charge error requires reversal when the defendant has properly objected to the
charge and we find “some harm” to his rights.  When the defendant fails to
object or states that he has no objection to the charge, we will not reverse
for jury-charge error unless the record shows “egregious harm” to the
defendant.  Thus, we review alleged charge error by considering two questions:
(1) whether error existed in the charge; and (2) whether sufficient
harm resulted from the error to compel reversal.

Ngo v. State, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005)
(internal footnotes omitted) (quoting Almanza v. State, 686 S.W.2d 157,
171 (Tex. Crim. App. 1985) [(op. on reh’g)] & Bluitt v. State, 137
S.W.3d  51, 53 (Tex. Crim. App. 2004)).

      “Under the Almanza
standard, the record must show that a defendant has suffered actual, rather
than merely theoretical, harm from jury instruction error” in order to call for
reversal.  Ngo, 175 S.W.3d at 750; see Almanza, 686 S.W.2d at
174.  “Errors that result in egregious harm are those that affect ‘the very
basis of the case,’ ‘deprive the defendant of a valuable right,’ ‘or ‘vitally
affect a defensive theory.’”  Ngo, 175 S.W.3d at 750 (quoting Hutch
v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).  

      “[T]o determine whether the
error was so egregious that a defendant was denied a fair and impartial trial,
a reviewing court should examine: 1) the entire jury charge; 2) the
state of the evidence; 3) the arguments of counsel; and 4) any other
relevant information in the record.”  Ngo, 175 S.W.3d at 750
n.48; accord Almanza, 686 S.W.2d at 171.  The state of the
evidence includes “the contested issues and weight of probative evidence.”  Marvis
v. State, 36 S.W.3d 878, 880 (Tex. Crim. App. 2001) (quoting Almanza at
171).  

      In McCormick’s charge
complaints, he did not object in the trial court.

      The charge as a whole is
unexceptional.  Cf. Paul J.
McClung & W. Scott Carpenter, Jury Charges for Texas Criminal Practice
(1997).  

      The indictment alleged that
McCormick committed, and the trial court instructed the jury on, indecency by
sexual contact by McCormick’s “touching the breast of” E.R., and on indecency
by exposure by McCormick’s “expos[ing his] genitals, knowing that” E. R.
“was present.”  (C.R. 4, 31, 32.)

      The evidence largely consisted
of E. R.’s testimony and the State’s evidence to corroborate and McCormick’s
evidence to impeach and contradict E. R.’s testimony.  E. R.
testified that, beginning from when she was fifteen or sixteen years of age
until after she turned seventeen, McCormick sometimes set E. R. on his
lap, and on those occasions sometimes touched her breast; McCormick sometimes
stood naked at E. R.’s bedroom door or at her bedside while he thought she
was asleep, and on some of those occasions masturbated; and while naked,
McCormick sometimes got in the shower with E. R. while she was showering,
including at least one time when she was sixteen years of age; that E. R. told
her mother once about the exposure at the time, but her mother did not believe
her; and that E. R. did not report the abuse again at the time because she was
afraid of McCormick.  The State also introduced letters that E. R. later
wrote to her mother, in which E. R. made substantially the same
allegations, and alleged that E. R.’s brother once saw McCormick with his
hand inside E. R.’s pants.  The State also called a former neighbor of
E. R., who testified that she at least twice saw McCormick set E. R.
on his lap, when she was fifteen years of age, put his arms around her waist,
hold her close, and put his hand between her legs; and that E. R. then
appeared frightened and confused.  The State also called a police detective who
investigated the case, and who testified concerning his interview with
McCormick.  The State introduced an audio recording of the interview, in which
McCormick admitted getting in the shower with E. R. once when she was
eighteen years of age, admitted that E. R.’s brother “probably” saw
McCormick put his hand inside E. R.’s pants, and admitted that he “might
have” massaged E. R.’s neck, (State Ex. 6); and otherwise denied
indecently touching E. R.  

      McCormick did not testify. 
McCormick called E. R.’s mother, who testified that E. R. made the
allegations against McCormick in retaliation for the mother’s reporting
E. R. to Child Protective Services over E. R.’s care of E. R.’s
child; that E. R. told her that E. R. had only dreamed that McCormick
exposed himself to E. R.; that the relationship between E. R. and
McCormick had been good; that E. R. passed up several opportunities to
report McCormick in safety, even though E. R. had been taught to report
abuse because E. R. had been abused as an infant by her biological father;
that E. R. sat on McCormick’s lap of her own accord; that E. R. could
not have seen McCormick from her bed where E. R. said she did; that
McCormick would not have had any opportunity to abuse E. R.; and that
McCormick admitted to showering with E. R. and putting his hand inside her
pants when she was seventeen or eighteen years of age.  McCormick also called a
family friend who corroborated E. R.’s mother’s testimony concerning
E. R.’s sitting on McCormick’s lap.  

      Extraneous Offense.  In
McCormick’s first issue, he contends that the trial court erred in not
including a reasonable-doubt instruction on extraneous-offense evidence.  “[I]f
the defendant so requests at the guilt/innocence phase of trial, the trial
court must instruct the jury not to consider extraneous offense evidence
admitted for a limited purpose unless it believes beyond a reasonable doubt
that the defendant committed the extraneous offense.”  George v. State, 890
S.W.2d 73, 76 (Tex. Crim. App. 1994).  This Court has held that “a trial court
has [a] sua sponte duty to submit a reasonable doubt instruction on evidence of
extraneous offenses in the guilt-innocence charge when such evidence is
admitted.”  Rodgers v. State, 180 S.W.3d 716, 724 (Tex. App.—Waco 2005,
no pet.).

      For purposes of evaluating
extraneous-offense reasonable-doubt instructions, “[t]he testimony that” the
appellant committed an offense against “the complainant[] in the manner alleged
in the indictment on more than one occasion does not constitute evidence of
extraneous offenses.”  Rodgers, 180 S.W.3d at 724 n.7; Shea v.
State, 167 S.W.3d 98, 104 (Tex. App.—Waco 2005, pet. ref’d).  Rather, we
consider only evidence of acts against the complainant “in a manner other than
alleged in the indictment.”  Rodgers at 724.  

      Among the most prejudicial
such evidence to which McCormick points is evidence that McCormick at least
twice put his hand inside E. R.’s pants and touched her vagina; that
McCormick caused E. R. to put a condom on his penis; that McCormick, while
naked, after pulling E. R.’s pants down, “massaged way down [her] legs”
and “massaged [her] front,” then caused her to massage him “front and back,
head to toe,” (3 R.R. at 39-40); that McCormick, while sometimes naked,
sometimes caused E. R. to lie in bed with him, and put his arms around
her; that McCormick sometimes caused E. R. to sit on his lap; that
McCormick, naked, sometimes got in the shower with E. R; and that
McCormick threatened E. R. with a pistol, punched her, and whipped her
with a belt.

      The State argues that the
extraneous-offense evidence was admissible, and that McCormick failed to
preserve his complaint.[2]  We assume that the evidence was admissible;
nonetheless, as the State concedes, “Certainly some of the listed testimony
would qualify as extraneous conduct.”  (Br. at 13.)  For the reasons stated in Rodgers,
and under general charge law, McCormick need not have objected to the
omission of a reasonable-doubt instruction in order to complain of the omission
on appeal.  See Ngo, 175 S.W.3d at 743-44; Almanza, 686 S.W.2d
157; Rodgers, 180 S.W.3d at 724 (“[A]ppellant was not required to
make an objection or request . . . in order for the trial court to
instruct the jury on this requirement.”).  Under this Court’s precedent, the
trial court erred by not including in the charge the reasonable-doubt
instruction regarding the extraneous offenses.  See Rodgers at 724.

      In evaluating the harm from
the erroneous omission of  a reasonable-doubt instruction on extraneous-offense
evidence, “[t]he issue is whether [the appellant] was harmed by the improper
omission of the instruction, not by the admission of evidence of extraneous
offenses.”  Rodgers, 180 S.W.3d at 724.  Among the factors in
evaluating such harm are whether “there was [any] mention of any burden of
proof other than ‘beyond a reasonable doubt,’” and whether “the evidence was
insufficient to prove beyond a reasonable doubt that” the appellant “committed
the” extraneous offenses.  See McClenton v. State, 167 S.W.3d 86, 98 (Tex. App.—Waco 2005, no pet.).  

      McCormick concludes, without
analysis, that he suffered egregious harm.  McCormick argues that “the State
comment[ed] on . . . ‘extraneous’ conduct during its closing
argument,” and lists seven comments.  (Br. at 19; see id. at 19-20.)  Of
those seven comments, however, only three sorts arguably constitute conduct
extraneous to the indictment: McCormick’s setting E. R. on McCormick’s lap
without touching her breast, one instance of exposure when E. R. was
perhaps eighteen years of age, and one instance of McCormick’s putting his hand
inside E. R.’s pants in Illinois.  (See McCormick Br. at 19, 20.)  As to harm, the State again argues that the evidence was admissible, and
argues, “Probably most telling on the issue of harm is the fact that
[McCormick] was acquitted of Count two of the indictment,” which alleged
indecency by exposure: “If the jury had improperly considered extraneous
evidence and wanted to convict [McCormick] for being a bad person, it certainly
could have convicted him on both counts.”  (Br. at 15.)  

      The charge was generally
unexceptional.  As to the evidence, McCormick admitted that he once showered
with E. R. when she was eighteen years of age, and admitted that he put
his hand inside E. R.’s pants.  The evidence of the extraneous offenses
was such that a reasonable finder of fact could have believed beyond a
reasonable doubt that McCormick committed them.  Nor do we see any reference to
any standard of proof of the extraneous offenses other than proof beyond a
reasonable doubt.  Rather, in the State’s argument, the State refers to
evidence of McCormick’s setting E. R. on his lap, and incorporates those
facts into the elements that the State has to prove “beyond a reasonable doubt.” 
(4 R.R. at 127-31.)  McCormick did not suffer egregious harm from the omission
of a reasonable-doubt instruction on extraneous-offense evidence.  We overrule
McCormick’s first issue.

      Unanimity.  In
McCormick’s second issue, he contends that the trial court erred in not
including a unanimity instruction as to Count 1.  “The right of trial by jury
shall remain inviolate.”  Tex. Const.
art. I, § 15.  “In all criminal prosecutions the accused shall have a
speedy public trial by an impartial jury.”  Id. § 10.  “As applicable
to the trial of felony cases in” Texas, the Constitutional “elements essential
to constitute a ‘trial by jury’” include “a unanimous verdict.”  Randel v.
State, 153 Tex. Crim. 282, 296, 219 S.W.2d 689, 698 (1949) (op. on reh’g); see
Ngo, 175 S.W.3d at 745; see also Tex.
Const. art. V, § 13; Tex.
Code Crim. Proc. Ann. art. 36.29 (Vernon 2006).  When the State “put[s]
on evidence of the repetition of the same criminal act on different occasions,”
“the jury must reach a unanimous verdict on which single, specific criminal act
the defendant committed.”  Ngo, 175 S.W.3d at 747, 748.

      On appeal, McCormick proposes
the instruction:

You have been instructed that your verdict,
whether it is guilty or not guilty, must be unanimous.  The following
instruction applies to the unanimity requirement as to Count I.

Count I of the indictment accuses the defendant
of committing the crime of Indecency with a Child by touching the breast of
E[.] R[.]  In order to return a guilty verdict, all twelve of you must
agree as to the same specific act, if any, that constitutes the conduct alleged
in Count I.

(Br. at 23 (citing Fifth Circuit District Judges Association
Pattern Jury Instructions (Criminal Cases) § 1.25 (2001)).)  The
State argues, “Appellant is really complaining because several incidents could
have supported the indictment, but an election was not requested.”  (Br. at 18 (citing O’Neal v. State, 746 S.W.2d 769, 771-72 (Tex. Crim. App. 1988)).) 
The Court of Criminal Appeals has rejected an argument similar to the State’s:

The State posits that jury unanimity is required
only if the defendant requests an election between separate offenses.  A
request for an election, however, is not a prerequisite for implementing Texas’ constitutional and statutory requirement of jury unanimity.  An election simply
limits the number of specific offenses that the jury may consider during its
deliberations.  . . . .  The failure to request an election does
not eliminate a defendant’s right to a unanimous verdict.

Ngo, 175 S.W.3d at 738 (internal footnote omitted). 
The State acknowledges, “Allowing a jury to choose from several separate acts,
each of which is a violation of a specific statute, without requiring the jury
to agree on which act was committed violates the unanimity requirement.”  (Br. at 18 (citing Ngo, 175 S.W.3d at 747-48).)  Without deciding that the
trial court erred by not submitting the specific instruction requested, we hold
that the trial court erred in failing to require unanimity on the specific instance
of indecency of which the jury found McCormick guilty.[3]

      As to harm, McCormick argues
only, “Recently, the Court of Criminal Appeals, in Ngo . . .
determined that appellant therein (who had not objected to the jury charge) had
suffered egregious harm when the trial court disjunctively submitted the
State’s theories of conviction in one general verdict form without a unanimity
instruction.”  (Br. at 23 (citing Ngo, No. 0504-04, Loislaw at *8-*10 (Tex. Crim. App. Mar. 16, 2005)).)  McCormick’s case is distinguishable from Ngo.  In
Ngo, “1) the jury charge permitted a non-unanimous verdict” on a
disjunctive charge; “2) during its closing argument, the State
forthrightly told the jury that it need not be unanimous in its verdict”;
“3) ‘there were contested issues at trial’”; and 4) “both the trial
judge and the prosecution misstated the law” in voir dire.  Ngo, 175
S.W.3d at 750-51 (quoting Ngo v. State, 129 S.W.3d 198, 201-202
(Tex. App.—Eastland 2004), aff’d, Ngo, 175 S.W.3d 738).  McCormick does
not point to, and we do not find, anything comparable here.  The State does not
argue harm.

      The evidence that McCormick
committed indecency with E. R. in the manner and on or about the date
alleged in the indictment was not distinct.  By the same token, the evidence
that McCormick did so on any other date was likewise weak.  The Texas Court of
Criminal Appeals has analyzed the harm from the possibility of a non-unanimous
verdict, in the context of the erroneous denial of a request for an election of
the offenses on which the State intended to rely for conviction, in Dixon v. Texas.  Dixon v. State, 201 S.W.3d 731, 735 (Tex. Crim. App.
2006).  Dixon concerned a prosecution for aggravated sexual assault of a
child.  Id. at 731; see Act of May 15, 2001, 77th Leg.,
R.S., ch. 459, § 5, 2001 Tex. Gen. Laws 893, 898-99 (amended 2003)
(current version at Tex. Penal Code Ann.
§ 22.021(a) (Vernon Supp. 2006)).  There, at trial, the child victim
“related a sequence of events that occurred every time appellant sexually
assaulted her.  . . . .  According to the victim, this sequence
of events occurred one hundred times.  Except for one time during the day, this
activity always occurred at night.  The child . . . gave no further
details regarding this activity.”  Dixon at 732.  The Court of
Criminal Appeals held that the verdict based on the victim’s undifferentiated
testimony did not violate the unanimity requirement:

      We . . . perceive no risk that
the present case led to a non-unanimous verdict.  The only distinguishing
detail among the one hundred offenses is that one occurred during the day,
while all the others happened at night.  . . . .  [T]here is
simply no basis in the record for the jury to believe that one incident
occurred during the day but that none occurred at night.  The nighttime
scenario being typical (ninety-nine out of one hundred), it is obvious from
this record that anyone who believed the complainant’s allegations in any
respect would believe that sexual assaults occurred at night.

Dixon, 201 S.W.3d at 735.

[I]t is meaningless to say the jurors
. . . could have disagreed about which incident was the basis for
conviction.  The offenses were described as identical and any one of them could
have occurred on any given day during the time period appellant stayed with the
victim’s family.  Aside from the day/night
distinction . . . , what precisely would the jurors be
disagreeing about?  Clearly, however, the jurors unanimously agreed that
appellant committed at least one sexual assault, at night, sometime during the year,
in the manner described by the complainant.

Id. n.23. 


      E. R.’s testimony was
likewise undistinguished.  She testified as follows concerning McCormick on
direct examination:

      Q.   . . . . 
[D]id anything in terms of sexual contact ever escalate?

      A.   Yes, ma’am.

      Q.   Okay.  And how—how did
that escalate?

      A.   Um, he started making me
sit on his lap.  He’d grab me by the hips and make me sit on his lap.

      Q.   Okay.

      A.   . . . .

            He
would take his hand and he would rub my breasts and he’d laugh like it was funny
or something.

(3 R.R. at 26.)

      Q.   . . . . 
Did you go over and sit down on his lap, you know, by yourself?

      A.   Usually, no.

      Q.   Okay.

      A.   Usually, I’d be, like,
asking him a question or whatever, and he would sit me down.

      Q.   Okay.  What do you mean
by that?  Like, how would he sit you down?

      A.   He would grab my [sic] by
the hips and have me sit on his lap, my back to—to him.

      Q.   Okay.  And what happened
when that would occur, when he’d put you on his lap?

      A.   Like I said, sometimes he
would take his hand, he would rub my breasts, um—

      Q.   Was that on the outside
of your clothing or underneath your clothing?

      A.   At first, yes, ma’am.  At
first, it was on the outside of my clothing.  Eventually, he would reach up my
shirt.

      Q.   Okay.  And you said that
he would touch you on the outside of your clothing.  Where on the outside of
your clothing was he touching you?

      A.   My breast.  My nipple
area.

      Q.   Okay.  What would he do
whenever he would touch your breast?

      A.   He would
just take his finger and rub it.  If it poked out, he’d laugh like it was
funny.

(3 R.R. at 26-27.)

      Q.   You said that, um—that
sometimes when he’d put you on his lap that he would touch you on the outside
of your clothing and that eventually changed.  Do you recall any times when he
would touch you underneath your clothing?

      A.   Um, just on my breast. 
Um, I’d be sitting on his lap and he’d make me sit down and he’d reach up my
shirt.

      Q.   Okay.  What would he do
then?

      A.   Same thing.  But this
time underneath my clothes.  He would rub my nipple and see if it could get
hard and laugh.  Sometimes he’d kiss me.

      . . . .

      Q.   What was he wearing
whenever he would pull you onto his lap on—on some of these occasions?

      A.   Sweatpants or shorts.

      Q.   Did you ever notice
anything after you would get up off of his lap?

      A.   Um, his shorts would have
a wet spot on them.

      Q.   Okay.  Did you notice
anything or feel anything sometimes when you—

      A.   You could feel—

      Q.   —would sit on his lap?

      A.   —sometimes
you could feel his penis get hard and it would move.

(3 R.R. at 28-29.)

      In one of E. R.’s letters
to her mother, she stated of McCormick:

“He’d have me sit on his lap and
sometimes he’d kiss me on my lips.  When I’d get up, his shorts would be all
wet with a spot on them.

“When I’d be sitting on his lap I
could feel when sometimes his penis moved.  . . . .

“After a while he started to touch me on my
breasts.  He would take his finger and rub over my nipple to see if it would
get hard.  Sometimes he could kiss it really quick and then laugh.  It poked
out after he rubbed it.  . . . .”

(3 R.R. at 76-77; see State’s
Ex. 4.)

      The evidence provides little
meaningful basis for distinguishing McCormick’s acts of indecency by sexual
contact: whether McCormick laughed, whether he touched E. R. on the inside
or outside of her clothing, whether he kissed her, or whether he got an
erection.  By the reasoning of Dixon, however, the evidence here
creates little risk of a non-unanimous verdict.  See Dixon, 201 S.W.3d
at 735.  McCormick did not suffer egregious harm from the omission of a
unanimity instruction.  We overrule McCormick’s second issue.

      Comment on Weight of
Evidence.  In McCormick’s third issue, he contends that the trial court
commented on the weight of the evidence and thus erred.  See Tex. Code Crim. Proc. Ann. art. 36.14. 
“In Texas, a trial judge must . . . refrain from making any remark
calculated to convey to the jury his opinion of the case.”  Brown v. State, 122
S.W.3d 794, 798 (Tex. Crim. App. 2003); accord Stayton v. State, 32 Tex. Crim. 33, 35, 22 S.W. 38, 38 (1893).  

      McCormick complains of the
following italicized language in the instruction to the effect that the jury
should find him guilty if the jury found that McCormick “engage[d] in sexual
contact with E[.] R[.] by touching the breast of E[.] R[.], a child
younger than seventeen years of age and not the spouse of” McCormick.  (Br. at 26 (quoting I C.R. at 31) (emphasis added by McCormick).)  McCormick argues that the
trial court should have instructed the jury: “engage[d] in sexual contact with
E[.] R[.] by touching the breast of E[.] R[.], and that E[.] R[.]
was then under the age of seventeen years and not the spouse of”
McCormick.  (Br. at 26 (citing Paul J.
McClung, Jury Charges for the Texas Criminal [sic] 98-99 (1995))
(emphasis added by McCormick).)  We assume without deciding that the trial
court erred.

      McCormick does not argue
harm.  As to harm, the State points to the uncontroverted evidence that
E. R. was a child at the time of McCormick’s sexual contact with her
breast and that E. R. was not McCormick’s spouse, and to the State’s jury
argument that the jury must so find in order to find McCormick guilty of
indecency by sexual contact.  McCormick did not suffer egregious harm.  We
overrule McCormick’s third issue.

      Ex Post Facto Application. 
In McCormick’s fourth issue, he contends that the trial court instructed the
jury on law not in effect at the time of McCormick’s offense, and thus erred.  

      McCormick complains of the
trial court’s definition of “sexual contact”:

      By the term “sexual contact,” as used
herein, is meant any touching by a person, including touching through clothing,
of the anus, breast, or any part of the genitals of a child, with intent to
arouse or gratify the sexual desire of any person; or, any touching of any part
of the body of a child including touching through clothing, with the anus,
breast, or any part of the genitals of a person with the intent to arouse or
gratify the sexual desire of any person.

(C.R. at 29.)  In particular,
McCormick complains of the language “touching through clothing.”  McCormick
argues that the trial court’s definition comports with the current statutory
definition of “sexual contact,” but not with that in effect at the time of the
offenses alleged in the indictment.  Under the current statute, “sexual
contact,” for purposes of Section 21.11:

means the following acts, if committed with the
intent to arouse or gratify the sexual desire of any person:

      (1)  any touching by a person, including
touching through clothing, of the anus, breast, or any part of the genitals of
a child; or

      (2)  any touching of any part of the body
of a child, including touching through clothing, with the anus, breast, or any
part of the genitals of a person.

Tex. Penal
Code Ann. § 21.11(c) (Vernon
2003).  The definition was amended effective September 1, 2001, for offenses
committed on or after that date.  See Act of May 23, 2001, 77th Leg.,
R.S., ch. 739, § 2, sec. (c), 2001 Tex. Gen. Laws 1463, 1463 (current
version at Tex. Penal Code Ann.
§ 21.11(c)); id. §§ 3-4, 2001 Tex. Gen. Laws at 1463-64.

      At the time of McCormick’s
offense, the statutory definition of “sexual contact” for purposes of Penal
Code Chapter 21 was:

      “Sexual contact” means the touching of the
anus, breast, or any part of the genitals of another person with intent to
arouse or gratify the sexual desire of any person.

Act of May 29, 1993, 73d Leg., R.S.,
ch. 900, art. 1, § 1.01, sec. 21.01(2), 1993 Tex. Gen. Laws at 3616, amended
by Act of May 23, 2001, 77th Leg., R.S., ch. 739, § 1, 2001 Tex. Gen.
Laws 1463, 1463.

      The case law, however, was
clear at the time of McCormick’s offense that the definition of “sexual
contact” included touching through clothing.  The Court of Criminal Appeals
“clearly dismisse[d] the notion that ‘a touching’ requires proof of flesh-to-flesh
contact” in 1978.  Deason v. State, 786 S.W.2d 711, 716 (Tex.
Crim. App. 1990), disavowed on other grounds, Gipson v. State, 844
S.W.2d 738, 740 (Tex. Crim. App. 1992) (Deason citing Resnick v.
State, 574 S.W.2d 558, 559-60 (Tex. Crim. App. [Panel Op.] 1978)).  Under
any other holding, “a defendant who thrust his hand beneath a victim’s
undergarments and fondled his or her genitals in a public place could not be
prosecuted for public lewdness if he were wearing a glove.”  Resnick, 574
S.W.2d at 560.

      The trial court did not
instruct the jury on law not in effect at the time of the charged offenses, and
so did not err.  We overrule McCormick’s fourth issue.

      Effective Assistance of
Counsel.  In McCormick’s fifth issue, he contends that his trial counsel
failed to render the effective assistance of counsel.  “In all criminal
prosecutions, the accused shall enjoy the right . . . to have the
Assistance of Counsel for his defence.”  U.S.
Const. amend. VI; see Rompilla v. Beard, 545 U.S. 374, 380 (2005); Strickland v. Washington, 466 U.S. 668 (1984).  “Ineffective
assistance under Strickland [v. Washington] is deficient
performance by counsel resulting in prejudice, with performance being measured
against an ‘objective standard of reasonableness,’ ‘under prevailing
professional norms.’”  Rompilla at 380 (quoting Strickland at
687, 688).   “In every case the court should be concerned with whether, despite
the strong presumption of reliability, the result of the particular proceeding
is unreliable because of a breakdown in the adversarial process that our system
counts on to produce just results.”  Strickland at 696.  “Without proof
of both deficient performance and prejudice to the defense, . . . it
c[an]not be said that the sentence or conviction ‘resulted from a breakdown in
the adversary process that rendered the result of the proceeding unreliable’
. . . .”  Bell v. Cone, 535 U.S. 685, 695 (2002) (quoting
Strickland at 687).  “Failure to make the required showing of either
deficient performance or sufficient prejudice defeats the ineffectiveness
claim.”  Robinson v. State, 22 S.W.3d 631, 636 (Tex. App.—Waco 2000,
pet. ref’d) (internal citation omitted).

      “[C]ounsel is ‘strongly
presumed’ to make decisions in the exercise of professional judgment.”  Yarborough
v. Gentry, 540 U.S. 1, 5 (2003) (quoting Strickland, 466 U.S. at 690).

When counsel focuses on some issues to the
exclusion of others, there is a strong presumption that he did so for tactical
reasons rather than through sheer neglect.  That presumption has particular
force where a petitioner bases his ineffective-assistance claim solely on the
trial record, creating a situation in which a court “may have no way of knowing
whether a seemingly unusual or misguided action by counsel had a sound strategic
motive.”

Gentry at 5-6 (quoting Massaro v. United States, 538
 U.S. 500, 505 (2003)) (internal citation omitted) (argument).  “A Strickland
claim must be ‘firmly founded in the record’ and ‘the record must
affirmatively demonstrate’ the meritorious nature of the claim.”  Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)); accord Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).  “In the absence of
anything in the record affirmatively demonstrating otherwise, we presume that
. . . counsel made a reasonable and strategic decision
. . . .”  Salinas at 740.

Direct appeal is usually an inadequate vehicle
for raising such a claim because the record is generally undeveloped.  This is
true with regard to the question of deficient performance—in which counsel’s
conduct is reviewed with great deference, without the distorting effects of
hindsight—where counsel’s reasons for failing to do something do not appear in
the record.

Goodspeed at 392 (internal footnotes omitted); see
Wiggins v. Smith, 539 U.S. 510, 523 (2003); Strickland, 466 U.S. at 689; Thompson at 814.  “[T]rial counsel should ordinarily be afforded an
opportunity to explain his actions before being denounced as ineffective.”  Goodspeed
at 392 (quoting Rylander v. State, 101 S.W.3d 107, 111 (Tex. Crim.
App. 2003)); accord Andrews v. State, 159 S.W.3d 98, 103 (Tex. Crim.
App. 2005).  “Absent such an opportunity, an appellate court should not find
deficient performance unless the challenged conduct was ‘so outrageous that no
competent attorney would have engaged in it.’”  Goodspeed at 392
(quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).  

      McCormick first complains of
counsel’s “failing to request a limiting instruction regarding extraneous
offenses in the jury charge at the conclusion of the guilt-innocence phase.”  (Br. at 31 (capitalization altered).)  McCormick does not point to the reasons for counsel’s
conduct in the record.[4]  Moreover, the decision not to request a
limiting instruction can constitute reasonable trial strategy.  See Garcia
v. State, 887 S.W.2d 862, 881 (Tex. Crim. App. 1994); Ali v. State, 26
S.W.3d 82, 88 (Tex. App.—Waco 2000, no pet.).    

      As to McCormick’s other
allegations of ineffective assistance, he does not point to the reasons for
counsel’s conduct in the record, and does not argue that he was prejudiced by
counsel’s conduct.  

      McCormick does not establish
that he did not have the effective assistance of counsel.  We overrule
McCormick’s fifth issue.

      CONCLUSION. 
Having overruled McCormick’s issues, we affirm.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

      Justice Vance, and

      Justice Reyna

Affirmed

Opinion delivered and filed January 10, 2007

Do not publish

[CR25]









[1]  The jury found McCormick not guilty in Count 2, which alleged
indecency with a child by exposure.  See Act of May 29, 1993, 73d Leg.,
R.S., ch. 900, art. 1, § 1.01, sec. 21.11(a)(2), 1993 Tex. Gen. Laws 3586,
3616 (amended 2001) (current version at Tex.
Penal Code Ann. § 21.11(a)(2)(A) (Vernon 2003)).





[2]  The State also urges us to reconsider our holding in Rodgers. 
See 180 S.W.3d 716.  We decline to do so.  See Ex parte Townsend, 137
S.W.3d 79, 82 (Tex. Crim. App. 2004); Awadelkariem v. State, 974 S.W.2d
721, 724-26 (Tex. Crim. App. 1998) (stare decisis).





[3]  The trial court instructed the jury, “If you agree upon a
verdict, it must be by unanimous vote.”  (C.R. at 34.)  The State does not
contend that, that instruction was sufficient.





[4]    McCormick points to counsel’s stated reason for
not objecting to hearsay evidence, in response to the trial court’s comment
that not objecting constituted “trial strategy”:

It is judge.  And if it please the Court, you’ll
notice that today the things that were brought up, I specifically asked [a
witness] about those.  And because I knew it was going to come up, because I
wanted to . . . ask those questions of [the witness].

(Br. at 37 (quoting 4 R.R. at 124, 125) (bracketed alterations
added); see McCormick Br. at 36-37.)