Opinion filed February 8, 2007
















 
 
  
 
 







 
 
  
 
 




Opinion filed February 8, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00002-CR 

                                                    __________

 

                          KRISTOPHER LYNWOOD
SMITH, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 266th District Court

 

                                                           Erath County, Texas

 

                                                Trial
Court Cause No. CR-12209

 



 

                                                                   O
P I N I O N

 

Kristopher Lynwood Smith was convicted by jury
verdict of robbery and was sentenced to twenty years incarceration in the Texas
Department of Criminal Justice, Institutional Division.  We affirm.

                                                             I.  Background Facts








On March 21, 2005, Kristopher Smith and his wife,
Kathy Jo Smith, drove to Stephenville to rob a bank. They selected the Town
& Country Bank.  Kathy changed
clothes in the front seat of their pickup and made it appear as though she was
pregnant.  She went into the bank and
handed the teller a handwritten note. 
The note stated that Kathy had a gun; demanded all of the teller=s 100s, 50s, and 20s; and warned the
teller against pressing the alarm.  The
teller gave Kathy the money.

While Kathy was in the bank, Kristopher went into
a nearby salon and priced potential presents for his wife.  Kathy left the bank and heard a man
yell.  She ran past the Smiths= pickup and headed to the back of a
nearby store where she was detained by a local businessman.  Kristopher looked around, got into the
pickup, and left.  Fifteen to twenty
minutes later, he returned and asked a salon employee what was going on.  She told him, and he went into a tobacco
shop.  There, he asked for the price of a
carton of cigarettes and then left the shopping center again.

The tobacco shop owner had observed Kathy changing
her clothes in the pickup.  When
Kristopher left his shop, the owner recognized the pickup.  He and two salon employees wrote down the
license plate number.  He gave that
number to the Stephenville police.  They
suspected Kristopher was involved in the robbery, and when they determined that
the Smiths lived in Weatherford, they contacted the Weatherford police.  The Weatherford police located the Smiths= pickup at their residence and took
Kristopher into custody.

Kathy testified for the State.  She stated that the robbery was Kristopher=s idea and that she participated
because he had intimidated her. 
According to Kathy, their children had been taken from them the previous
year because of allegations that Kristopher was beating her.  Kristopher told her that she would never see
her children again if they did not rob a bank. 
The Smiths were under financial pressure, and Kristopher told her that
they could not get jobs that paid enough to solve their financial problems.

The State also called Dale B. Stobaugh, a
supervising forensic scientist with the DPS Crime Lab.  He testified that he compared handwriting
samples from Kristopher and Kathy with the handwriting on the note given to the
bank teller and that, in his opinion, the note was written by Kristopher and
not Kathy.  The jury found Kristopher
guilty of robbery and assessed his punishment at twenty years confinement.

                                                                       II.  Issues








Kristopher challenges his conviction with two
issues.  Kristopher argues that the
evidence was legally and factually insufficient because the evidence of his
participation was predicated solely on the uncorroborated testimony of an
accomplice.  Kristopher also argues that
the trial court erred by not sua sponte instructing the jury that, before it
could consider extraneous offense evidence, it must first find that the State
had proven the extraneous offenses beyond a reasonable doubt.

                                  III.
Was the Evidence Legally and Factually Sufficient?

A. 
Standard of Review.

In a legal sufficiency review, we view all of the
evidence in the light most favorable to the verdict and then determine whether
a rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307 (1979).  To determine if the evidence is factually
sufficient, we review all of the evidence in a neutral light.  Watson v. State, 204 S.W.3d 404, 414
(Tex. Crim. App. 2006) (overruling in part Zuniga v. State, 144 S.W.3d
477 (Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex.
Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App.
1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  Then, we determine whether the evidence
supporting the verdict is so weak that the verdict is clearly wrong and
manifestly unjust or whether the verdict is against the great weight and
preponderance of the conflicting evidence. 
Watson, 204 S.W.3d at 414-15; Johnson, 23 S.W.3d at 10-11.

B. 
Analysis.

Accomplice-witness testimony implicating another
is viewed with caution.  Gill v. State,
873 S.W.2d 45, 48 (Tex. Crim. App. 1994). 
A defendant cannot be convicted on the testimony of an accomplice unless
this testimony is corroborated by other evidence tending to connect the
defendant with the offense.  Tex. Code Crim. Proc. Ann. art. 38.14
(Vernon 2005).  There is no exact rule
for the amount of evidence required for corroboration.  Dowthitt v. State, 931 S.W.2d 244, 249
(Tex. Crim. App. 1996).  AAll that is required is that there be
some non-accomplice evidence which tends to connect the accused to the
commission of the offense alleged in the indictment.@
Gill, 873 S.W.2d at 48.  This
evidence may be either direct or circumstantial.  Reed v. State, 744 S.W.2d 112, 126
(Tex. Crim. App. 1988).








We review the sufficiency of corroborating
evidence by eliminating from consideration the accomplice=s testimony and then examine the
remaining evidence to determine if there is evidence that tends to connect the
defendant with the commission of the offense. 
Id.
at 125.  The corroborating evidence does
not have to establish guilt beyond a reasonable doubt, and it need not prove
all of the elements of the charged offense. 
Gill, 873 S.W.2d at 48. 
Presence alone at the crime scene is insufficient to corroborate the
accomplice=s
testimony.  However, Aevidence that an accused was in the
company of the accomplice close to the time of the offense, coupled with other
suspicious circumstances, may tend to connect the accused to the offense.@ 
Id.
at 49.  

Utilizing this review, there was ample evidence
corroborating Kathy=s
testimony and connecting Kristopher to the crime.  He was seen with her immediately prior to the
robbery while she was engaged in unusual activity; his conduct during and after
the robbery was suspicious; and the forensic evidence connected him directly
with the robbery=s
execution.

Kristopher was aware of his wife=s unusual activity immediately prior to
the robbery.  Witnesses observed the
Smiths= pickup
parked in the shopping center near the bank. 
They saw Kathy change clothes in the front seat of the pickup and then
saw Kristopher get out of the pickup. 
The clothing Kathy changed into was inappropriate for the weather.  It was a warm day, but she was wearing a
heavy shirt, bib overalls, and gloves. 
She also had a large stuffed animal in the front of her overalls.

During and immediately after the robbery,
Kristopher=s conduct
was suspicious.  While his wife was in
the bank, he went into a salon and priced potential presents for her.  This alone is not corroborative but, when
considered in connection with subsequent events, is probative.  When Kathy left the bank and heard a man
yell, she ran past their pickup. 
Kristopher did not follow his wife, attempt to determine why she was
running away, or intervene when she was being chased.  Instead, he drove off.  He came back a few minutes later and asked
what was going on.  Upon learning that
his wife had been apprehended, he did not check on her but went inside a
tobacco shop, asked for the price of a carton of cigarettes, and then left the
shopping center.  The jury could have
reasonably concluded from this evidence that Kristopher did not want anyone to
realize that Kathy was his wife and that he wanted witnesses who could place
him outside the bank engaging in activities unrelated to the robbery.








Finally, a handwriting expert testified that
Kristopher wrote the demand note used during the robbery.  Kristopher argues that the note does not
corroborate Kathy=s
testimony because of inconsistencies in her testimony.  Our analysis focuses not on the connection
between the forensic evidence and her testimony or on her credibility in
general but on the connection between the forensic evidence and the crime.  See Gill, 873 S.W.2d at 48.  Because the note was used in the robbery and
because the State=s
handwriting expert testified that Kristopher wrote it, the note connects him to
the crime and is, therefore, corroborating evidence.  

The State satisfied Article 38.14=s requirement that Kathy=s accomplice testimony be
corroborated.  With her testimony, the
evidence is legally and factually sufficient to support the jury=s verdict.  The jury could have concluded beyond a
reasonable doubt that it was his idea to rob a bank, that he planned the
details of the robbery, that he convinced Kathy to conduct the robbery, and
that he wrote the demand note.  

When all of the evidence is considered, the jury=s decision is not against the great
weight and preponderance of the evidence. 
Kristopher argues that there is no evidence connecting him to the crime
and that, except for Kathy, every other witness testified that he did nothing
illegal.  As noted, the forensic evidence
did connect him with the demand note, and Kathy=s
testimony was sufficiently corroborated. 
Moreover, the remaining witnesses=
testimony establishes that his conduct, if not illegal, was certainly
suspicious.  The jury had no evidence to
explain why he did not react to her change of clothes in the pickup, why he did
not react to her flight from the bank or subsequent arrest, or why he acted as
though he had no connection with Kathy. Kristopher=s
first issue is overruled.  

                                                                              

             IV.  Did the Trial Court Err by Not Sua Sponte
Instructing the Jury that the State 

                  Must
Prove Any Extraneous Offense by a Preponderance of the Evidence?

 

Kristopher argues that, when Kathy testified that
he used methamphetamine, abused her, committed other bank robberies with an
ex-girlfriend, and attempted prior bank robberies with her, the trial court was
required to sua sponte provide the jury with an instruction that it could not
consider evidence of collateral crimes unless it determined beyond a reasonable
doubt that he was guilty of those crimes.

A. 
Standard of Review.








Kristopher did not request a jury instruction when
this evidence was introduced or when the charge was prepared.  Accordingly, we first determine whether the
failure to provide the instruction was erroneous.  Arline v. State, 721 S.W.2d 348, 351
(Tex. Crim. App. 1986).  If so, we then
determine if the error resulted in Aegregious
harm.@  Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985).  These are errors
that affect the very basis of the case, deprive the defendant of a valuable
right, or vitally affect a defensive theory. 
Id.
at 172.

            B.  Analysis.

The law is well settled that, if the State offers
evidence of extraneous offenses during the punishment phase of a trial, the
trial court must sua sponte give the jury a reasonable doubt instruction.  See Ellison v. State, 86 S.W.3d 226,
227-28 (Tex.
Crim. App. 2002).  The Texas Court of
Criminal Appeals has not addressed whether this requirement extends to the
guilt/innocence phase of the trial. 
Intermediate courts are split on the trial court=s
duty.  The Waco Court of Appeals has held
that trial courts must sua sponte give a reasonable doubt instruction in the
guilt/innocence phase.  See Rodgers
v. State, 180 S.W.3d 716, 720 (Tex.
App.CWaco
2005, no pet.).  The Fort Worth and Houston First courts have
reached the opposite conclusion.  See
Allen v. State, 180 S.W.3d 260, 266 (Tex.
App.CFort
Worth 2005, no pet.); Rodriquez v. State, 137 S.W.3d 228, 230-31 (Tex. App.CHouston [1st Dist.] 2004, no pet.).[1]

We need not address the extent of the trial court=s duty during the guilt/innocence phase
of the trial because, even if it was error not to sua sponte provide a
reasonable doubt instruction, the record does not support a finding of
egregious harm.  Kristopher argues that
the failure to provide an instruction denied him a fair and impartial trial
because Kathy was allowed to paint him in the worst possible light without any
supporting evidence by testifying that he was a drug addict, an abusive
husband, and a serial bank robber.

Whether the testimony was admissible is not before
us.  The issue is did the jury=s consideration of this testimony
without a reasonable doubt instruction result in egregious harm?  We find that it did not because the trial
court did instruct the jury on the presumption of innocence and on the State=s burden of proof.  The trial court=s
charge instructed the jury:








[A]ll
persons are presumed to be innocent and no person may be convicted of an
offense unless each element of the offense is proved beyond a reasonable doubt.
. . . So, in this case, the defendant is presumed to be innocent until each
element of the offense with which he has been charged is proved beyond a
reasonable doubt, and if there is a reasonable doubt in your minds as to such
matter, you must acquit the defendant.

 

In all criminal cases the burden of proof is upon
the State.  The defendant is presumed to
be innocent until his guilt is established by legal and competent evidence
beyond a reasonable doubt.

 

Consequently, when the jury considered Kathy=s testimony, it was not acting without
any guidance.  Instead, it was
specifically instructed to consider all of the State=s
evidence against the presumption of innocence and to hold the State to a
reasonable doubt standard when determining each element of the charged offense.

We presume that the jury followed the trial court=s instructions.  Luquis v. State, 72 S.W.3d 355, 366 (Tex. Crim. App.
2002).  The record in this case does not
suggest otherwise.  We have previously
found that Kathy=s
testimony was sufficiently corroborated with the testimony of independent
witnesses and the forensic evidence.  
This corroborating evidence connected him directly to the robbery and
foreclosed the possibility that the jury convicted him simply because of Kathy=s description of him or because of an
emotional reaction to her testimony. 
Kristopher=s second
issue is overruled.

                                                         V.  Holding

The judgment of the trial
court is affirmed.

 

 

RICK STRANGE

JUSTICE

February 8, 2007

Do not publish.  See Tex.
R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Strange, J.











[1]The Amarillo
and Fourteenth court of Appeals have also held that there is no sua sponte
requirement but did so in unpublished opinions. 
See Gilbert v. State, No. 14-02-00727-CR, 2003 WL 22176625
at *4 (Tex.
App.CHouston [14th Dist.] Sept. 23, 2003, no pet.) (not
designated for publication); Salazar v. State, No. 07-01-00389-CR, 2002
WL 246642 at *3 (Tex. App.CAmarillo Feb. 21, 2002, pet. ref=d) (not designated for publication).